MICHAEL L. MADDEN *vs.* HANS H. ESTIN, trustee.

89-P-608.

Essex. November 16, 1989. - March 20, 1990.

Present: WARNER, C.J., ARMSTRONG, & KASS, JJ.

*Practice, Civil*, Summary judgment. *Contract*, Sale of real estate. *Waiver.*

In a civil action, the judge incorrectly granted a motion for summary judg-
ment where there was shown, on materials submitted, a genuine issue
of material fact with respect to the parties' intentions when they exe-
cuted an extension of the time for performance of an agreement for the
purchase and sale of real property. [395]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 10, 1981.

The case was heard by *John T. Ronan*, J., on a motion for
summary judgment.

*Alan B. Rubenstein* for the defendant.

*Michael E. Casey* (*Theodore S. Collatos* with him) for
the plaintiff.

WARNER, C.J. This case grew out of the following se-
quence of events, which we draw from materials submitted
on cross motions for summary judgment. Under a written
purchase and sale agreement dated August 7, 1979, the
plaintiff (Madden) agreed to buy from two trustees[1] (hereaf-
ter Estin) residential property in Manchester, Massachusetts,
for a price of $320,000. Madden paid a $15,500 deposit. The
agreement provided that time was of the essence and called
for a closing date of September 12, 1979. There was a mort-
gage contingency clause which provided that if Madden
could not obtain financing (after diligent efforts) on specified
terms, and so notified Estin in writing, on or before August

---

[1]One of them, H. Nelson Hartstone, died before the commencement of
this action.

24, 1979, Madden had the right to cancel the agreement and to a return of his deposit. On Madden's default, Estin could retain the deposit as liquidated damages.

Madden did not give written notice of his inability to secure financing to Estin on or before August 24, 1979. Estin was ready, willing and able to convey on September 12, 1979, but Madden did not proceed with the closing. According to Madden, he had discussions with Estin and the broker prior to August 24, 1979, about the possibility that Madden might not be able to secure financing in time to close by September 12, 1979.

On October 12, 1979, Madden, Estin and the broker executed a document which provided in full: "For consideration of an additional deposit of Fifteen Thousand ($15,000) Dollars held by Mr. Hans Estin, the Purchase and Sale Agreement on Boardman Avenue, Manchester, dated August 7, 1979, is hereby extended to convey on or before 3:00 P.M., October 30, 1979." According to Estin, Madden's request was to extend the closing date, and that is what the extension agreement provided.

On October 22, 1979, Madden wrote to Estin notifying him of Madden's intention to cancel the agreement, in part because of Madden's inability to obtain the specified financing from one bank. Madden did not make demand for a return of his original and additional deposits; rather, he commented, "I hope this does not foul up your plans too much, but I feel that for the short term it is the only decision which I can make, as expensive as it is." Estin did not respond.

Later, after Madden had introduced a new prospective buyer to Estin, he wrote to Estin on January 12, 1980, suggesting that a portion ($20,500) of the $30,500 "which I forfeited" be returned as a "finder's fee, commission or partial refund of deposit." After explaining how he arrived at his figure, Madden said: "While I would prefer no liquidated damages, that is not reasonable . . . ." Madden closed by inviting Estin's thoughts or counter proposal. Estin did not respond.

The plaintiff commenced this action on June 10, 1981, in the Superior Court seeking recovery of his deposits. Following Estin's answer, there was no significant activity in the case until, on July 25, 1988, an order of dismissal was entered pursuant to Mass.R.Civ.P. 41(b)(1), 365 Mass. 804 (1974). Madden and Estin then timely filed motions for summary judgment and, after hearing, Madden's motion was allowed. From the ensuing judgment ordering Estin to pay the amount of the deposits plus interest and from the denial of his motion for summary judgment, Estin has appealed.

The judge decided the motion on the basis of the pleadings, a transcript of Madden's deposition, the purchase and sale agreement, the extension agreement, letters from Madden to Estin and from lending institutions to Madden, and the affidavits of Madden and Estin. The judge concluded that the date provided in the purchase and sale agreement (August 24, 1979) for written notification by Madden of his inability to obtain financing had been subsequently waived by Estin. Therefore, the judge ruled, as Madden was not able to secure satisfactory mortgage financing before the extended closing date, he was entitled to a return of his deposits under the terms of the purchase and sale agreement. "When the court considers the materials accompanying a motion for summary judgment, 'the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.' *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970), quoting [from] *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962). 'Also, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment.' *Gross* v. *Southern Ry.*, 414 F.2d 292, 297 (5th Cir. 1969). '[T]he moving party must affirmatively show that there is no real issue of fact.' *Hub Assocs.* v *Goode, supra.* Indeed, '[A] party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of fact on every relevant issue raised by the pleadings. This is so even though . . . he would have no burden if the case were to go to trial.' *Mack* v. *Cape Eliz-*

*abeth School Bd.*, 553 F.2d 720, 722 (1st Cir. 1977). See *Felix* v. *Young*, 536 F.2d 1126, 1134-1135 (6th Cir. 1976)." *Attorney General* v. *Bailey*, 386 Mass. 367, 371 (1982).

The crucial issue in this case is intent, whether viewed with respect to the scope of the extension agreement made by the parties or the question of waiver (an intentional act, see *Gamache* v. *Mayor of North Adams*, 17 Mass. App. Ct. 291, 293 [1983]) by Estin of the financing contingency clause and its notice requirement. When intent is at the core of a controversy, summary judgment seldom lies. *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984). *Gurry* v. *Cumberland Farms, Inc*, 406 Mass. 615, 624 (1990). See *Godbout* v. *Cousens*, 396 Mass. 254, 258-259 (1985); *Bossi* v. *Whalen* 19 Mass. App. Ct. 966, 968 (1985).

What emerges from the materials submitted in support of and in opposition to Madden's motion for summary judgment is ambiguity with respect to the extension agreement itself, the circumstances leading to it and the conduct of the parties both before and after its execution. At best, the affidavits of the parties may be read to state different intentions (see *Godbout* v. *Cousens, supra* at 261): Madden's to extend the financing contingency and its notice clause to the new closing date; and Estin's merely to extend the closing date. There is reasonable support for both positions from the facts set forth by the parties, with permissible inferences drawn under summary judgment standards, see *Attorney Gen.* v. *Bailey, supra*, and thus summary judgment for either party is inappropriate. Neither has met his burden. The case presents a paradigm of one demanding exploration of all the circumstances, see *Keating* v. *Stadium Management Co.*, 24 Mass. App. Ct. 246, 249, 250, 251-252 (1987), and a decision as to the parties' intent made by a trier of fact who has heard and evaluated all the relevant evidence. See *Quincy Mut. Fire Ins. Co* v. *Abernathy, supra.*

The judgment is reversed.[2] There was no error in the denial of Estin's motion for summary judgment. The case is remanded to the Superior Court for trial.

*So ordered.*

---

[2]Madden's motion for summary judgment was brought against Estin and the broker, First Realty Group, Inc., and the final judgment appears to have been entered against both. The docket entries show, however, that, on First Realty's motion, Madden's action against it was dismissed on May 26, 1982.