## J. GIBB BROWNLIE *vs.* KANZAKI SPECIALTY PAPERS, INC.

No. 96-P-0592.

Hampden. December 3, 1997. - March 12, 1998.

Present: JACOBS, GILLERMAN, & SPINA, JJ.

*Anti-Discrimination Law,* Age, Termination of employment, Prima facie case, Burden of proof, Damages. *Employment,* Discrimination, Termination. *Limitations, Statute of. Evidence,* Failure to produce witness.

In a civil action, the judge did not err in ruling that the only event of alleged employment discrimination properly before the jury was the plaintiff's claim of discharge, which was timely filed within six months as required by G. L. c. 151B, § 5. [412-413]

Evidence presented at the trial of an age discrimination case warranted the jury's finding that the plaintiff established a prima facie case that the defendant employer terminated the plaintiff's employment due to his age, as well as the jury's rejection of the defendant's proffered explanation for the plaintiff's discharge. [413-416]

At the trial of a complaint alleging age discrimination in discharge from employment, error, if any, in the judge's instructions regarding the defendant employer's burden of persuasion in a mixed motive case was harmless, where the jury found that the defendant's proffered explanation for the plaintiff's termination was not a legitimate business reason and was merely a pretext for discrimination. [416-419]

In an age discrimination case, the judge did not abuse his discretion in instructing the jury that they could draw an adverse inference from the failure of the defendant employer to call a key witness at trial, where the defendant failed to provide a plausible explanation as to why the witness was unable to testify. [419-420]

Allegedly prejudicial remarks made during closing argument by the plaintiff's counsel in an age discrimination case did not warrant a new trial. [420]

In an age discrimination case, the trial judge properly awarded double damages to the plaintiff where the evidence was sufficient to support a finding that the defendant employer terminated the plaintiff's employment with knowledge, or reason to know, that the termination violated the provisions of G. L. c. 151B, § 4. [420]

CIVIL ACTION commenced in the Superior Court Department on December 2, 1992.

The case was tried before *James P. Dohoney*, J., and posttrial motions were heard by him.

*William A. Escobar* (*Samuel A. Marsella* with him) for the defendant.

*Charles V. Ryan* for the plaintiff.

GILLERMAN, J. J. Gibb Brownlie was discharged from his position as vice-president of public affairs for Kanzaki Specialty Papers, Inc. (Kanzaki), in February, 1992. He had been demoted in 1990, when he turned sixty, and demoted again in 1991. After he was discharged, Brownlie filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) in April, 1992, alleging age discrimination. General Laws c. 151B, § 4(1B), makes it an unlawful practice for an employer to refuse to hire or employ or to bar or to discharge from employment any individual because of his or her age. (Under G. L. c. 151B, § 1(8), a person over forty years may claim age discrimination.) Brownlie withdrew his complaint from the MCAD and filed his action in the Superior Court in December, 1992.

In June, 1994, a jury returned a verdict on special questions in favor of Brownlie. He was awarded compensatory damages in the amount of $262,252 and emotional distress damages in the amount of $50,000. The trial judge subsequently ordered Kanzaki to pay double damages in the amount of $624,504, attorney's fees in the amount of $157,492.50, and costs in the amount of $10,404.35. He concluded that the president of Kanzaki had "reason to know" that the termination violated G. L. c. 151B, § 4. The trial judge also denied Kanzaki's posttrial motions for judgment notwithstanding the verdict or a new trial. Kanzaki filed a timely appeal from the final judgment and from the denial of its posttrial motions.

We proceed with the factual background and a discussion of the issues open on appeal.

1. *Factual background.* We state the facts under the standard applicable to a motion for judgment notwithstanding the verdict.[1] Kanzaki is a specialty paper company and a subsidiary of Kanzaki Japan, a Japanese corporation. In 1991, the year im-

---

[1]The standard for reviewing the denial of a motion for judgment notwithstanding the verdict is "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Boothby* v. *Texon, Inc.*, 414 Mass. 468, 470 (1993), quoting from *Poirier* v.

mediately prior to Brownlie's discharge, annual sales were $89,641,000. Kazuhico Watanabe was the president of Kanzaki during the relevant time period, and he reported daily to the president of Kanzaki Japan. Kanzaki Japan had a written policy that required all employees, including senior managers, to retire at age sixty. Although a mandatory retirement policy was in effect at Kanzaki Japan, Watanabe knew that age discrimination was illegal in Massachusetts and in the United States.

In December, 1986, Kanzaki purchased a plant in Massachusetts from Ludlow Corporation, another paper company. Brownlie had been employed by Ludlow in various positions from 1978 to 1986. After Kanzaki purchased the Ludlow plant, most of the former Ludlow employees, including Brownlie, became employees of Kanzaki.

Brownlie was fifty-six years old at the time he was hired by Kanzaki. From December, 1986, until June, 1989, he was marketing services and public relations manager. His duties included responsibility for advertising, sales promotion, public relations, and product management.

On June 1, 1989, Watanabe promoted Brownlie, then age fifty-nine, to the position of vice-president of sales and marketing and Brownlie received a salary increase from $46,000 to $71,000. He was responsible for advertising, sales promotions, public relations, and product management, and reported directly to Watanabe. He also managed the inside sales force, which was comprised of approximately eight people, and the field sales force, which was made up of approximately twelve sales people and three regional managers.

In August, 1990, when Brownlie was sixty years old, Watanabe relieved Brownlie of his sales responsibilities and transferred those tasks to Hamlet Collina, a new employee who was forty-nine years old. Collina became vice-president of sales, and Brownlie was demoted to vice-president of marketing. Although Brownlie was demoted, his salary and benefits were not reduced. When Watanabe demoted Brownlie in 1990, he knew that Brownlie was sixty years old.

On the day that Brownlie learned of his impending demotion,

*Plymouth*, 374 Mass. 206, 212 (1978). This standard calls for a presentation of the evidence in the light most favorable to the plaintiff, "without weighing the credibility of the witnesses or otherwise considering the weight of the evidence. . . ." *Bavuso* v. *Caterpillar Industrial, Inc.*, 408 Mass. 694, 695 n.1 (1990).

Watanabe said to him, "[Y]ou've been doing a good job, but I want a younger man . . . . [W]hen is Steve Jablonski[2] planning to retire?" Watanabe also informed Brownlie during the same conversation that he was hiring Collina, whom he described as "a younger man," as the new vice-president of sales. Brownlie asked Watanabe if he was being demoted because he was not doing a good job. Watanabe answered, "No, it's not that, it's a reason beyond your control."

The next day, Brownlie reported the substance of his conversation with Watanabe to Kevin Moriarty, who was the director of human resources. Prior to Brownlie's 1990 demotion, Moriarty had explained to Watanabe the discrimination laws of the United States.

From August, 1990, when he was first demoted, to the middle of March, 1991, Brownlie did not receive any criticism from Watanabe regarding his performance as vice-president of marketing. Nevertheless, in April of 1991, he was demoted again. Watanabe promoted Collina to vice-president of sales and marketing, and Brownlie, now relieved of both sales and marketing, became vice-president of public affairs, a newly-created position. As was the case with his first demotion, Brownlie's salary and benefits were not reduced at the time of the second demotion. Although Kanzaki claimed that Brownlie was being demoted for poor performance, Brownlie received a four percent merit raise two months after being demoted to vice-president of public affairs.

On February 19, 1992, ten months after the second demotion, Watanabe terminated Brownlie's position with the company without consulting any other senior managers. Brownlie was then sixty-one years old. Two other employees were discharged on the same day that Brownlie was terminated, including Jablonski, who was sixty-two; Jablonski was the same employee about whom Watanabe inquired in August, 1990. After Brownlie was discharged, his advertising, sales promotions, and public relations responsibilities were given to Collina.

In response to a special verdict form, the jury concluded that Brownlie had presented a prima facie case of employment discrimination when he was discharged in February, 1992 (special question 1); that Kanzaki did not have a legitimate business purpose in discharging Brownlie (special question 2);

[2]Steve Jablonski was one year older than Brownlie.

that the reason advanced by Kanzaki for Brownlie's discharge was a pretext for age discrimination (special question 3); that age discrimination was a "motivating factor" in Kanzaki's decision to discharge Brownlie (special question 3A); and that Kanzaki failed to prove that "[t]he legitimate business purpose given by it as the reason for the discharge, standing alone, would have convinced [it] to discharge Brownlie in February of 1992" (special question 3B). The special verdict form, including the responses of the jury, is reproduced in the Appendix to this opinion.

2. *The denial of the motion for judgment n.o.v.*

a. *Statute of limitations.* Kanzaki argues that Brownlie failed to file his claim with the MCAD within the six-month period of limitations provided by G. L. c. 151B, § 5. This is so, the argument runs, because the measuring period should start from the demotions in 1990 and 1991, and not the termination of employment in 1992,[3] and therefore the judge should have allowed Kanzaki's motion for judgment notwithstanding the verdict.

Kanzaki's argument proceeds from the proposition that Brownlie "did not seriously contend below that his dismissal was *in and of itself* [emphasis in original] discriminatory — only that he would not have been in the non-essential advertising position" at the time of his nondiscriminatory discharge but for his two previous (allegedly) discriminatory discharges.

Kanzaki mischaracterizes, or misunderstands, Brownlie's position. At the colloquy between counsel and the judge regarding the special verdict form, the judge first stated his preference for a single discriminatory incident — Brownlie's termination in February, 1992.[4] Brownlie's counsel, in explaining his acceptance of the form of question proposed by the judge, said, "this was a package deal . . . the intent was formed in July of 1990 to do this on the installment plan . . . . [B]y the time they got all through with this plan, concocted in 1990 and carried all the way through, all of his duties had been transferred to the same younger man . . . Collina." The judge responded that Brownlie's counsel "could argue it that way."

Since the judge permitted Brownlie's counsel to argue that the employment discrimination occurred, if at all, when Brown-

---

[3]The defendant filed his claim with the MCAD within two months of the termination of his employment.

[4]The judge told counsel that "the only thing giving us a cause of action was the termination. . . . [Y]ou don't have the continuing violation. . . ."

lie was terminated in February, 1992, the judge implicitly concluded that the evidence supported the theory put forward by Brownlie's counsel. There was ample support in the record for the judge's ruling, as discussed more fully below. Thus, special question 1 appropriately inquired whether Brownlie "has presented believable evidence to make up a *prima facie* case of employment discrimination relative to age *when he was discharged in February of 1992*" (emphasis added).

Since the judge did not err in ruling that the only event of alleged employment discrimination that the jury properly could be called upon to assess was the discharge in February, 1992, and since the complaint to the MCAD was filed within six months thereafter, there was no violation of the short statute of limitations.

b. *Brownlie's evidence of discrimination and Kanzaki's proffered reasons for its employment decision.* The familiar "three-stage order of proof" in discrimination cases, see *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 440-441 (1995), is commonly reduced to two stages at trial. This occurs when the employee establishes a prima facie case of discrimination, with the consequence that the unlawful discrimination is presumed (stage one). See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997). See also *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1 (1998). The employer then may articulate a nondiscriminatory reason for the discharge decision coupled with supporting evidence that its proferred reason was the "real reason" (stage two), see *Matthews*, 426 Mass. at 128, and, if it does so, the presumption of the illegality of the employer's action "vanishes." *Ibid.* However, the plaintiff's prima facie evidence does not vanish; it remains as evidence in the case, see Liacos, Massachusetts Evidence § 5.8.5, at 236-237 (6th ed. 1994), available to satisfy the employee's ultimate burden of persuasion on the issue of discrimination. See *Blare*, 419 Mass. at 445.

So it was in this case. At the conclusion of Kanzaki's case,[5] and the judge's charge, the jury found (via special questions 1, 2, and 3) that (i) Brownlie had established a prima facie case of employment discrimination, (ii) Kanzaki had no legitimate reason for terminating Brownlie, and (iii) the reasons proffered

---

[5]Following Brownlie's case, and after Kanzaki rested, Brownlie put on only one witness who testified briefly as to a marginal point in the case.

by Kanzaki for the discharge were a pretext for age discrimination. See note 12, *infra.*

Kanzaki now argues that its motion for judgment notwithstanding the verdict should have been allowed because (i) Brownlie failed to establish a prima facie case by failing to come forward with "any evidence" that Brownlie's discharge was "motivated by his age" and (ii) Kanzaki's evidence of its nondiscriminatory reasons for the discharge compels the allowance of the motion. We conclude that these arguments have no merit.

i. *Brownlie's evidence of discrimination.* The jury could infer that Watanabe's intent to discriminate was first evident in July, 1990, when Brownlie learned of his impending demotion. It was then that Watanabe told the plaintiff, "[Y]ou've been doing a good job, but I want a younger man. . . . [W]hen is Steve Jablonski [then sixty-one years old] planning to retire?" Watanabe's statements were admissible. *Northeast Metropolitan Regional Vocational Sch. Comm.* v. *Massachusetts Commn. Against Discrimination*, 31 Mass. App. Ct. 84, 87 (1991).

In ruling on Brownlie's application for multiple damages, the judge wrote, and we agree, that these remarks by Watanabe were "much stronger" than mere "stray remarks," as in *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 302 (1991). Probative remarks, such as those made by Watanabe to Brownlie, are ordinarily not to be judged as matter of law; they are for the jury to assess. See *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 314 n.7 (1993) ("Ultimately, the jury had to decide whether the remarks were made, whether they indicated a discriminatory intent, and how much weight should be given them").

Watanabe's additional remark to Brownlie — that the 1990 demotion which deprived him of his sales responsibilities was due to "a reason beyond [Brownlie's] control" — could be taken by the jury as additional evidence that the reason beyond Brownlie's control was his age. The jury could also have inferred that Watanabe was referring to Kanzaki Japan's mandatory retirement policy and the need he felt to implement it. The judge observed (in the same memorandum referred to above), "[h]ere Watanabe acknowledged that Brownlie has performed well and then simultaneously took action to demote him."

While Kanzaki claimed that Brownlie was *demoted* in 1990 for poor performance, Brownlie presented credible evidence that he was performing his job in a satisfactory manner, that he

had received several raises based on his performance, and that he was praised for his performance by Watanabe. From this evidence, the jury could also infer that Brownlie was demoted in 1990 for a reason other than the quality of his job performance, and that his demotion was merely a preliminary step in Kanzaki's plan to terminate him.

The jury could also infer from the evidence that Brownlie's second demotion in April, 1991, was in furtherance of Kanzaki's discriminatory intent, and that the second demotion, claimed to be for poor performance, was "papered over" with a merit increase in compensation.

In sum, the jury could have found that Brownlie's discharge was the culmination of a carefully arranged sequence of events to conceal the purposeful design to discharge Brownlie because of his age.[6] We conclude that the jury were warranted in finding that Brownlie had made out the necessary prima facie case (special question 1). See *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.), supra.*

ii. *Kanzaki's justification.* Kanzaki argues next that its evidence of a nondiscriminatory reason for Brownlie's discharge was both "compelling and undisputed." Kanzaki fails to recognize that its evidence, even if undisputed, could be — and was — rejected by the jury in its entirety. See special questions 2 and 3.[7] See also *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. at 442 (in stage two, the employer must "produce *credible* evidence . . . that the reason or reasons advanced were the real reasons" [emphasis added]); *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 138 (1976) (when an employee has made a prima facie case of discrimination, and the employer's explanation "is

---

[6]Kanzaki also argues that Brownlie failed to produce evidence that he was replaced by a younger person — that in fact Brownlie's position had been eliminated. Given Brownlie's direct evidence of discrimination (Watanabe's remarks), no such proof was necessary, but if it were necessary, the evidence was supplied by the testimony of Collina on cross-examination. That testimony was sufficient for the jury to conclude that Kanzaki did not abolish Brownlie's position and that a younger, similarly qualified person was retained to do the job.

[7]Even if Kanzaki prevailed on this point, it would not necessarily be entitled to the allowance of its motion for judgment n.o.v. As explained more fully below, the jury, in such a case, would then be required to determine whether, on the whole case, Brownlie had carried his burden of persuasion that he was discharged because of his age.

wholly disbelieved [and hence is transparently a pretext], the employee should prevail").

In any event, the jury's findings rejecting Kanzaki's explanation had adequate support in the evidence. Kanzaki claimed that in 1992 it was in severe financial difficulty. Even assuming that to be so,[8] when Kanzaki reduced its work force by only thirteen persons during 1991-1992, Watanabe, as the judge pointed out in the same memorandum referred to above, in February, 1992, "terminated three people. Two of these three were persons about whom [Watanabe] had expressed age related comments" (Brownlie and Jablonski).

Further, financial difficulty in a company the size of Kanzaki does not necessarily dictate, or even necessarily explain, the discharge of *this* employee. The jury could reasonably reject the proffered business explanation for Brownlie's discharge as not credible.

3. *The denial of the motion for a new trial.*

a. *The "mixed motive" charge.* The thrust of Kanzaki's argument in support of its request for a new trial is its claim that the trial judge erred in giving the jury a "mixed motive" charge which impermissibly shifted the burden of persuasion to Kanzaki. See special question 3B.[9]

It appears from the colloquy concerning the form of the special questions that the judge, in accepting the "mixed motive" inquiry, had in mind the decision of the Supreme Court in *Price Waterhouse* v. *Hopkins*, 490 U.S. 228 (1989), as discussed in *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. at 300-301. In *Price Waterhouse* the Court shifted the burden of persuasion to the employer — where the evidence demonstrated that the employer had mixed motives, that is, one legitimate and the other illegitimate, for its employment decision — to prove that the "legitimate reason, standing alone, would have induced it to make the same decision." *Price Warehouse, supra* at 252.

It does not appear that the Supreme Judicial Court has ever applied the "mixed motive" formula in a case involving Mas-

---

[8]This assumption is by no means clear. Kanzaki "broke even" in 1992, the year of the discharge. Brownlie also introduced evidence that Kanzaki paid royalties to its corporate parent in the amount of $1.1 million in 1990, $1.62 million in 1991, and $1.68 million in 1992. Meanwhile, its total assets rose from $23,400,000 in 1988 to $97,500,000 in 1991.

[9]Kanzaki again argues in this portion of its brief that the form of special question 1 was error. We disagree, for the reasons stated earlier in this opinion.

sachusetts discrimination law. In a 1976 decision, *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. at 138-139, the court made it clear that where the employer advances a nondiscriminatory reason which has reasonable support in the evidence, and the employee has already established his prima facie case, the burden then falls on the employee to prove by a preponderance of the evidence that the employer's proffered reasons were not the real reasons for its action.

In *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. at 444-445, after reviewing Federal cases involving the third stage of the order of proof (but without citation to *Price Waterhouse*), the court held that Massachusetts is a "pretext only" jurisdiction, i.e., (i) judgment shall enter for the employee where the employee has established a prima facie case and has shown that the employer's reasons are a pretext (or that the actual motivation was discrimination) and (ii) where the evidence remains conflicting as to the employer's motive, the employee continues to bear the burden of persuasion on the ultimate issue of discrimination. Neither *Blare* nor *Wheelock* suggests a shifting of the burden of *persuasion* to the employer at any stage in the trial.

Thus, while a mixed motive case may be different from a case involving merely conflicting evidence as to the employer's real motive, there is no reason to believe — certainly not after *Blare* — that the burden of persuasion in a discrimination case would shift to the employer even in a mixed motive case.[10] Indeed, the court in *Blare*, without commenting directly on a mixed motive case, makes this quite clear: "Combined with establishment of a prima facie case by a preponderance of the evidence, a showing of pretext eliminates any legitimate explanation for the adverse hiring decision and warrants a determination that the plaintiff was the victim of unlawful discrimination. The plaintiff need not conclusively exclude all other possible explanations for the decision and prove intent beyond a reasonable doubt." 419 Mass. at 446.

Plainly, the judge concluded that this was a mixed motive case, and special questions 3A and 3B were directed to that

[10]For an opinion of this court pre-*Blare*, applying the *Price Waterhouse* analysis, see *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. at 300-302. For an early post-*Blare* decision, see *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 447-448 (1996).

circumstance. Special question 3A put the burden on Brownlie to prove that age discrimination was "a motivating factor" in Kanzaki's discharge decision, and 3B put the burden on Kanzaki to prove that its proffered business purpose, "standing alone," would have convinced Kanzaki to discharge Brownlie.

We need not consider whether what the judge did in 1994 — given the 1991 decision of this court in *Johansen* — was error-free, or whether *Blare* should be given retroactive effect in the circumstances, see *Tamerlane* v. *Warwick Ins. Co.*, 412 Mass. 486, 489-490 (1992) (decisional law is generally applied retroactively, unless a departure from the rule is necessary to protect the reasonable expectations of the parties), because any error by the judge in approving special question 3B was harmless.

In answer to special question number 1, the jury found that Brownlie presented, by credible evidence, a prima facie case of employment discrimination. In answer to special question 2, the jury found that Kanzaki's evidence failed to show "a legitimate business purpose as the reason for the discharge" of Brownlie in 1992, and in special question 3 the jury found that the reason articulated by Kanzaki for Brownlie's discharge "was a pretext for age discrimination."[11]

In sum, the jury having rejected Kanzaki's business explanation for the discharge, and having concluded that Kanzaki's proffered explanation was merely a pretext, the plaintiff was entitled to judgment.[12] See *Blare*, 419 Mass. at 444-445 (once plaintiff has established a prima facie case, and has shown, to the satisfaction of the fact finder, that the employer's articulated

---

[11]The judge, upon the request of the jury, gave a supplemental instruction regarding the meaning of "pretext." He said, "pretext means that the explanation was not the real reason, and that means the plaintiff has the burden of proving that the real reason for the discharge was the plaintiff's age, and the explanation offered is not the real reason and is an attempt to make that the real reason."

[12]The jury should have been instructed that in the event of an affirmative answer to special question 1 and an affirmative answer to special question 3 they should proceed directly to special question 4 regarding damages. Special question 2 appears to be inappropriately directed to Kanzaki's burden to *produce* "credible evidence" of its real reasons. *Blare*, 419 Mass. at 442.

If, upon the employee's application, the judge determines that the employer's evidence is "transparently a pretext," *Wheelock* at 138, then the employee prevails on his prima facie case. *Ibid.* If, as in this case, the judge does not so determine, the issue of the credibility of the employer's evidence — whether or not it is a pretext — goes to the jury, with the burden of

reasons are a pretext, the plaintiff is entitled to recover for illegal discrimination). See also *Wheelock*, 371 Mass. at 138, 139 ("if the employee has proved a prima facie case of . . . discrimination and the employer gives an explanation . . . which has no reasonable support in the evidence or is wholly disbelieved [and hence is transparently a pretext], the employee . . . prevail[s]"; the burden of persuasion, which rests at all times with the employee, may be met by proving by a preponderance of the evidence that the employer's "facially proper reasons given for its actions . . . were not the real reasons for that action"); *Handrahan* v. *Red Roof Inns, Inc.*, 43 Mass. App. Ct. 13, 18-19 (1997).[13]

b. *The missing witness instruction.* Kanzaki also argues that it is entitled to a new trial because the trial judge, over Kanzaki's objection, erred in instructing the jury that they could draw an adverse inference by reason of the failure of Kanzaki to call Watanabe to the stand.[14]

We see no error. "[W]hether an inference can be drawn from the failure to call witnesses necessarily depends . . . upon the posture of the particular case and the state of the evidence." *Commonwealth* v. *Anderson*, 411 Mass. 279, 282 (1991), quoting from *Commonwealth* v. *O'Rourke*, 311 Mass. 213, 222 (1942). See *Commonwealth* v. *Fredette*, 396 Mass. 455, 465 (1985) ("In both civil and criminal cases we have permitted, when justified, comment on a party's failure to call witnesses").

Counsel for Kanzaki gave conflicting statements regarding why Watanabe would not be able to testify. He first indicated that Watanabe had to go back to Tokyo; later, counsel stated that Watanabe had been called to Germany. Although the judge allowed the use of voir dire testimony by Robert Champigny, who began serving as president of Kanzaki in 1993, regarding

persuasion remaining with the employee. Special question 3 is directed to that issue and special question 2 appears not to have been necessary.

[13]Kanzaki argues that the judge erred by failing to give an instruction that it was Brownlie's burden to show "but for" his age he would not have been terminated. There was no error. "The plaintiff need not conclusively exclude all other possible explanations for the [employer's] decision and prove intent beyond a reasonable doubt." *Blare*, 419 Mass. at 446. Kanzaki relies on *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. 559, 563 (1981). That case, arising out of Massachusetts labor laws, G. L. c. 150A, has no bearing on this employment discrimination case.

[14]The judge also permitted Brownlie's counsel to comment during closing arguments on Kanzaki's failure to call Watanabe to the stand.

Watanabe's unavailability to testify, no explanation was ever provided as to why Watanabe had been called out of the country. An affidavit filed by Watanabe merely stated that "compelling business reasons mandate my return to Japan." Upon a careful examination of the record, we conclude that the judge was never provided with a plausible explanation as to why Watanabe was unable to appear at trial. Thus, the judge did not abuse his discretion by giving the missing witness instruction.

c. *Prejudicial remarks.* We have also considered Kanzaki's argument that a new trial is required because of alleged prejudicial remarks made by Brownlie's counsel during closing argument. We have reviewed the transcript and conclude that this argument has no merit.

4. *Multiple damages.* Kanzaki also appeals from the award of double damages to Brownlie pursuant to G. L. c. 151B, § 9. In order to award multiple damages under the statute, there must be a finding that the discriminatory act or practice complained of was committed with knowledge, or reason to know, that the act or practice at issue violated the provisions of G. L. c. 151B, § 4, which prohibits, inter alia, age discrimination. *Fontaine* v. *Ebtec Corp.,* 415 Mass. 309, 317 & n.9 (1993). The trial judge found that Kanzaki, through Watanabe, had reason to know that the termination of Brownlie violated the discrimination laws of Massachusetts.

The record supports the judge's findings. Kevin Moriarty, Kanzaki's director of human resources, had engaged in "extensive conversations" with Watanabe regarding the discrimination laws of the United States, and Watanabe admitted in his deposition that he knew that discrimination was illegal. The trial judge found that Watanabe had directly expressed his views on the age of Brownlie when he said he wanted a younger man for the position of vice president of marketing and sales. The judge also inferred that when Watanabe consulted Kanzaki counsel for advice prior to the 1992 terminations, he did not alert counsel to the remarks he made to Brownlie or to the ages of Brownlie and Jablonski. Based on these findings, we see no error in the trial judge's decision to award double damages to Brownlie.

Brownlie's application for appellate attorney's fees is denied.

*Judgment affirmed.*

APPENDIX.

The special verdict form submitted to the jury provided, in pertinent part, as follows.

"1. Do you find that Plaintiff J. Gibb Brownlie has presented believable evidence to make up a *prima facie* case of employment discrimination relative to age when he was discharged in February of 1992?

YES __X__ NO _____

(If the answer is 'YES', please answer Question No. 2. If the answer is 'NO', please date and sign this form.

"2. Do you find that Defendant Kanzaki Specialty Papers, Inc. has given in evidence a legitimate business purpose as the reason for the discharge of Mr. Brownlie in February of 1992?

YES _____ NO __X__

"3. Do you find that the Plaintiff J. Gibb Brownlie has proven that the reason given by the Defendant Kanzaki Specialty Papers, Inc. for the discharge in February, 1992 of Mr. Brownlie was a pretext for age discrimination?

YES __X__ NO _____

"3A. Do you find that the Plaintiff J. Gibb Brownlie has proven that age discrimination was a motivating factor in the decision of the Defendant Kanzaki Specialty Papers, Inc. to discharge Mr. Brownlie in February of 1992?

YES __X__ NO _____

(If the answer is 'YES', please proceed to Question No. 3B. If the answer is 'NO', and the answer to Question No. 3 is 'NO', please date and sign this form. If the answer is 'NO', and the answer to Question No. 3 is 'YES', please proceed to Question No. 4.

"3B. Has the Defendant Kanzaki Specialty Papers, Inc. proven that the legitimate business purpose given by it as the reason for discharge, standing alone, would have convinced them to discharge Mr. Brownlie in February of 1992?

YES _____ NO __X__

(If the answer is 'YES', and the answer to Question No. 3 is 'NO', please date and sign the form. If the answer is 'YES', and the answer to Question No. 3 is 'YES', please proceed to Question No. 4. If the answer is 'NO', please proceed to Question No. 4.)

"4.   Did the Plaintiff J. Gibb Brownlie suffer any economic damage as a result of the discharge in February, 1992?

YES ___X___ NO _____

(If the answer is 'YES', please proceed to Question No. 5. If the answer is 'NO', please proceed to Question No. 6.)"