Iris Bray *vs.* Community Newspaper Company, Inc.,
& others.[1]

No. 05-P-854.

Essex. March 15, 2006. - August 3, 2006.

Present: Greenberg, Duffly, & Katzmann, JJ.

*Anti-Discrimination Law,* Age, Employment, Prima facie case, Burden of proof. *Employment,* Discrimination. *Unlawful Interference. Malice. Practice, Civil,* Summary judgment.

A Superior Court judge erred in granting summary judgment in favor of the defendant in an action alleging employment discrimination and intentional interference with contractual relations, where the materials submitted by the plaintiff raised genuine issues of material fact as to both counts of the complaint. [43-48]

Civil action commenced in the Superior Court Department on February 14, 2003.

The case was heard by *David A. Lowy,* J., on a motion for summary judgment.

*Jeffrey R. Mazer* for the plaintiff.

*Judith A. Miller* for the defendants.

Greenberg, J. At age sixty, after ten years of continuous at-will employment with the defendant Community Newspaper Company, Inc. (company), the plaintiff resigned her position as an advertising sales person. In her complaint in the Superior Court, she alleged that the defendants, starting in September, 1999, took at least seven distinct adverse actions against her because of her age, in violation of G. L. c. 151B, § 4(1B), which caused her to resign from the job on February 16, 2000 (Count I).[2] She also alleged that the individual defendants

---

[1] Robert Tisi, Ellin Carroll, and Michael Moses.

[2] On February 14, 2003, the plaintiff filed a complaint with the Massachusetts Commission Against Discrimination (MCAD), alleging age and

intentionally interfered with her employment with the company (Count II).

The defendants filed a motion for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). A judge of the Superior Court allowed the defendants' motion, and the plaintiff filed this appeal. In an appeal from summary judgment, "[o]ur reading of the summary judgment materials is in a light most favorable to the nonmoving party, here the plaintiff." *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 448 (1996), citing *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 438 (1995). Based upon the submitted materials and with inferences favorable to the plaintiff, *Hub Assocs., Inc.* v. *Goode*, 357 Mass. 449, 451 (1970), we conclude that the plaintiff raises genuine issues of material fact as to both counts of the complaint. Where, as here, "intent is at the core of a controversy, summary judgment seldom lies." *Madden* v. *Estin*, 28 Mass. App. Ct. 392, 395 (1990). See *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. 34, 38 (2005). We therefore reverse the judgment.

In analyzing discrimination claims brought under G. L. c. 151B, we look to the familiar three-stage analytical framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-804 (1973) (*McDonnell Douglas*). See *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 134-137 & n.5 (1976). For recent articulations of the standard by the Supreme Judicial Court, see *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997); *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 116-118 (2000); *Knight* v. *Avon Prod., Inc.*, 438 Mass. 413, 420 n.4 (2003); *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. at 39-41. See also *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 6 & n.8 (1998). "In stage one, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. In stage two, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for

gender discrimination. After an investigation, the MCAD found probable cause to credit her allegations of age discrimination and lack of probable cause to support her claims of gender discrimination and constructive discharge.

its actions. Finally, in stage three, the burden shifts back to the plaintiff to show that the employer's articulated reason is not the true reason, but rather a pretext." *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 660-661 (1997) (citations omitted). "[I]f successful in stage three, 'the plaintiff is entitled to recover for illegal discrimination under G. L. c. 151B.' " *Id.* at 661, quoting from *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. at 444-445 (footnote omitted).

1. *Prima facie case.* The defendants argue that the plaintiff failed to establish a prima facie case because she suffered no adverse employment action or real, objective harm. See *Mac-Cormack* v. *Boston Edison Co.*, 423 Mass. 652, 663 (1996) ("subjective feelings of disappointment and disillusionment" do not constitute an adverse employment action). The cases upon which the defendants rely for this proposition involve instances where courts have recognized that an employer's need for wide latitude in setting the conditions of employment supersedes the affected employee's sensibilities concerning a particular decision. For example, in *Knight* v. *Avon Prod., Inc.*, 438 Mass. at 421-422, an older employee was given the sales district in which she wanted to work, and thus, putting a younger person in her prior sales district did not amount to an adverse employment action. See also *Lewis* v. *Gillette*, 22 F.3d 22 (1st Cir. 1994) (holding that no adverse employment action was established merely because the affected employee reported being watched and stared at by fellow employees in the workplace).

Standing on a different footing, however, are the allegations in the plaintiff's complaint and deposition testimony. The plaintiff's deposition testimony was to the effect that the general atmosphere at work did not favor older workers. She claims to have suffered through a number of events, beginning in September, 1999, and continuing through February, 2000, that could constitute an "adverse employment action" based upon her age. Besides changing her sales territory with such frequency that it made it difficult for her to generate sales, the defendant Robert Tisi, the company's sales manager, would delay the issuance of credits to advertisers the plaintiff solicited who were legitimately entitled to them. In addition to criticizing

the plaintiff for her lack of professionalism in handling a telephone complaint from a vexatious customer, Tisi issued to the plaintiff a written warning that she alleges contained unfounded allegations that she had mismanaged her Melrose territory, none of which had appeared in any of her prior performance evaluations. Moreover, it appears from the summary judgment materials that the criticism regarding mismanagement of the Melrose territory was unfounded, because at the time Tisi wrote a memorandum on the subject, the plaintiff had been working there for a period of only three months and the sales figures for that period indicated that she had achieved 133 percent of her sales target for that territory, an increase from that achieved by her predecessor in the same territory. Despite these positive results, in January, 2000, she was removed from the Melrose territory and assigned elsewhere. The Melrose territory was assigned to another salesperson who was significantly younger than the defendant and who also received a $3,000 pay increase. It serves no purpose to outline other alleged adverse actions which subsequently led to the plaintiff's resignation, except to say that, if believed, a trier of fact could conclude that these events were to her "material disadvantage," and not merely "subjective feelings of disappointment and disillusionment." *MacCormack* v. *Boston Edison Co.*, 423 Mass. at 662-663.

The burden is also on the plaintiff at stage one of the *McDonnell Douglas* formulation to establish a discriminatory animus. See, e.g., *Scotti* v. *Arrow Electronics, Inc.*, 37 Mass. App. Ct. 954, 955 (1994); *Sullivan* v. *Liberty Mut. Ins. Co.*, 444 Mass. at 40-41. In opposition to the defendants' motion for summary judgment, the plaintiff furnished the motion judge with an affidavit of Douglas Booth, one of her supervisors at the Danvers office. Booth states that there was an "unspoken policy" at the company for managers to cut costs as much as possible, and that one of the ways to accomplish this was to "eliminate older workers who were generally more experienced and who commanded higher salaries." He corroborated the plaintiff's deposition testimony concerning this practice and Tisi's preference to work with younger, attractive women. He stated that one way of accomplishing the cost cutting "was to

set artificially high sales goals for older workers and if they were then unable to meet those goals, they could be, and in some cases were[,] terminated and younger workers brought in at lower salaries." Combined with the defendant's deposition testimony of other disparate treatment of similarly situated younger employees, see *Scotti* v. *Arrow Electronics, Inc.*, 37 Mass. App. Ct. at 955 (noting that although much of the evidence presented by the plaintiff was insufficient to survive summary judgment, there was at least a "toehold" which warranted further proceedings), a discriminatory animus can be readily inferred.

There was also other evidence that persons similarly situated were treated differently. The assignment of a younger salesperson with less experience than the plaintiff to the Melrose territory, together with a salary increase, and a corresponding decrease in the defendant's salary are illustrative. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. at 129. In contrast to other employees during this same period, the plaintiff was required to provide a doctor's note when too sick to work. She received a reprimand for alleged inappropriate dress while others similarly clad were not so reprimanded. Last, there was a telephone call made by Tisi himself to the plaintiff who was sick at home, in which he said, "You're not sick, you're just upset." Although the defendants proffer various neutral explanations for these events, there exists a genuine issue of material fact warranting a trial on these issues.

The plaintiff does not dispute that the defendants have articulated some neutral nondiscriminatory explanations for the adverse actions that led to her resignation. We need not embark on an exegesis of the specific rationales contained in the defendants' summary judgment materials, except to say that the defendants did meet their burden under stage two of the *Mc-Donnell Douglas* test. However, our reading of the summary judgment materials in a light most favorable to the plaintiff indicates that there exists a genuine issue of material fact whether the proffered reasons were a pretext. The Booth affidavit satisfies the plaintiff's burden. That submission, of course, does not mean that a trier of fact would be required to find for the plaintiff, only that for summary judgment purposes,

it suffices. *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. at 117.

In addition to the prima facie evidence to which we have referred, which "remains as evidence in the case," *Brownlie* v. *Kanzaki Specialty Papers, Inc.*, 44 Mass. App. Ct. 408, 413 (1998), to demonstrate pretext the plaintiff offered evidence that she was satisfactorily performing her position throughout the ten years of her employment as evidenced by her performance reviews and a 1999 performance award. Although the defendants' summary judgment materials showed that the plaintiff received a disciplinary warning in December, 1999, the defendants did not submit any evidence that her performance in managing her territory was worse than the performance of other employees and did not assert that employees other than Tisi had registered complaints about her professional conduct.

2. *Intentional interference with contractual relations.* The motion judge granted summary judgment on this claim because of his ruling that the plaintiff had "no reasonable expectation of establishing a prima facie case of discrimination." This meant that "her proffered showing of intentional interference by way of improper motive or means also fails." He also ruled that the evidence did not "support an inference that the individual defendants acted with actual malice." However, under our analysis, the plaintiff did establish a prima facie case of discrimination, and the Booth affidavit points to improper motive or means.

All of the defendants knew that the plaintiff had a reasonable expectancy of continued employment and, so far as appears from her materials, interfered with her employment relationship by subjecting her to a pattern of discrimination based on her age. Their actions constitute improper motive and are not privileged. "[A] defendant may escape liability if the interference [is] privileged as part of his employment responsibilities." *Williams* v. *B & K Med. Sys., Inc.*, 49 Mass. App. Ct. 563, 574 (2000), quoting from *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. 253, 273 (1977). Supervisors do not, however, "have blanket authority to interfere with the contractual relations of their employees." *Draghetti* v. *Chmielewski*, 416 Mass. 808, 817 (1994). When the conduct is based on improper motive, no privilege exists. *Ibid.*

Discrimination constitutes an improper means or motive for purposes of an interference claim, and constitutes actual malice that, if proved, would defeat the defendants' conditional privilege. *Weber* v. *Community Teamwork, Inc.*, 434 Mass. 761, 781 (2001). The plaintiff has therefore also presented sufficient evidence to survive summary judgment on this claim.

*Judgment reversed.*