Leibensperger, Edward P., J.
A dispute arising from an investment of $5 million by defendants (“the Lin Family”) in Botanical Research Institute, Inc. (“BRI”) commenced in 2008. BRI was organized by plaintiffs, Lin-Huey Chen and Dr. Lan Bo Chen (“the Chen Family”). The Lin Family made the investment in 2004, on the basis, allegedly, of an oral agreement with the Chen Family that they would implement a written business plan that had been presented by them to the Lin Family. In exchange for the $5 million investment, the Lin Family received 50% ownership of BRI while, pursuant to the oral agreement, the Chen Family retained 50% ownership as “sweat equity” for their expected work to implement the business plan.
In 2008, the Lin Family became aware of facts they found disturbing regarding the Chen Family’s stewardship of BRI. Through their counsel in Boston, Don M. Kennedy, a partner in the firm of Goodwin Procter LLP, they raised claims of fraud, breach of fiduciary duty and mismanagement of BRI by the Chen Family. The Chen Family denied the claims made by the Lin Family and countered with their own claims. The Chen Family and BRI were represented at all times by counsel from the firm of DLA Piper LLP, Bruce E. Falby. Both firms and the individual lawyers are skilled counsel, experienced in the resolution of sophisticated business disputes.
By a series of phone conversations, letters, emails and exchanges of draft settlement documents, the parties, through their counsel, negotiated about a settlement of all disputes. Among other important terms, the settlement discussions involved the Lin Family surrendering their shares in BRI for a price and agreeing not to use the names or goodwill of the Chen Family in any way. Negotiations continued from late 2008 until 2011, at least. The Chen Family and BRI assert that on several occasions from February 2009 to February 2011, the parties reached an agreement to settle all issues between them. It is undisputed, however, that at all times the parties contemplated that the settlement was to be documented by a single, written document entitled Settlement Agreement to be signed by all relevant parties. It is also undisputed that such a Settlement Agreement was never executed. Accordingly, the issue presented is whether the parties’ preliminary manifestations of assent to the terms of a settlement gave rise to an enforceable contract.
The Chen Family and BRI commenced this action to enforce the Settlement Agreement. They seek a declaration that the Settlement Agreement is enforceable, an order of specific performance, and damages for the Lin Family’s failure to perform under the Settlement Agreement. The Chen Family and BRI move for partial summary judgment. Specifically, they move for a determination that there is a Settlement Agreement that is an enforceable contract binding on the Lin Family. The Lin Family opposes summary judgment on the ground that there are genuine disputes of fact regarding whether the parties intended to enter into an enforceable settlement by any means other than a fully executed, written Settlement Agreement.
ANALYSIS
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982). “Where, *555 as here, ‘intent is at the core of a controversy, summary judgment seldom lies.’ ” Bray v. Community Newspaper Company, Inc., 67 Mass.App.Ct. 42, 43 (2006), quoting Madden v. Estin, 28 Mass.App.Ct. 392, 395 (1990).
The Chen Family’s burden on this summary judgment motion is to establish as an undisputed fact that the parties intended to be bound by their communications preliminary to the execution of the formal Settlement Agreement. “It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.” Situation Mgmt. Systems, Inc. v. Malouf, Inc., 430 Mass. 874, 878 (2000). ‘The controlling fact is the intention of the parties.” McCarthy v. Tobin, 429 Mass. 84, 87 (1999).
The parties’ Consolidated Rule 9A(B)(5) Statement of Material Facts (“SMF”) discloses a fundamental dispute with respect to the parties’ intentions during the period from 2008 to 2011. That dispute is whether the parties intended at all times during their communications that no party would be bound unless and until the formal Settlement Agreement document was executed by all parties, signatures notarized, and the Chen Family received a written representation that Goodwin Procter had the authority to represent the Lin Family shareholders. An affidavit from Mr. Kennedy, on behalf of the Lin Family, states, in essence, that the insistence on an executed, formal Settlement Agreement before a party was to be bound was the premise upon which the negotiations proceeded. An affidavit of Mr. Falby, on behalf of the Chen Family, concedes that his clients did not want an agreement to be effective until after execution of a formal Settlement Agreement, but denies that a party could not be “bound” by an earlier expression of agreement to the terms of a settlement. SMF ¶1 of Defendants’ Statements of Additional Facts; Affidavit of Don M. Kennedy, ¶7; Supplemental Affidavit of Bruce Falby, ¶¶4-5. This dispute over the parties’ understanding and intent lies at the “core of the controversy.” Bray, cited supra. The dispute prevents summary judgment for the Chen Family.
The Chen Family argues that the court should discount the affidavit of Mr. Kennedy because (1) he does not specify a particular conversation or representation by Mr. Falby stating that preliminary communications would not be binding, and (2) there allegedly was no insistence by the Chen Family, as evidenced by the documentary record, on the execution of a formal Settlement Agreement before an agreement could be binding. Both arguments fail.
Mr. Kennedy’s affidavit (¶7) stating “[djuring all of our communications concerning possible settlement, on behalf of the BRI parties, Mr. Falby insisted that settlement would become effective and binding on the parties once they (a) signed a written settlement agreement, and (b) had all of the signatures notarized, and (c) the Lin Parties represented in the written settlement agreement that Goodwin Procter had the authority to represent the Lin Family shareholders in the negotiation of any settlement agreement” is well supported in the record. For example, Mr. Falby’s letter of November 11, 2008, which served as the commencement of the negotiations demanded that “[a]ny settlement must also include the following elements as a condition to settlement' (emphasis added). The letter then detailed the terms or elements. They included that the Lin Family surrender their shares in BRI and provide full and completed notarized general releases, as well as “notarized proof from each of the Lin Family members of (a) the number of shares that they own, and (b) that they have given Goodwin Procter the authority to represent them in this matter.” By use of the words “as a condition to settlement” in the settlement offer an issue of fact is created as to whether a condition precedent to the formation of a binding contract was created. “A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.” Massachusetts Municipal Wholesale Electric Company v. Danvers, 411 Mass. 39, 45 (1991). To ascertain whether the parties intended to create a condition precedent, “a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances.” Id. at 45-46.[1]
In addition, Mr. Falby included in the first draft of a settlement agreement, and in eveiy version thereafter, the following sentence:
‘The Agreement shall become effective, and the obligations hereunder shall be triggered, only upon execution of the Agreement by all signatories thereto.”
Settlement Agreement, ¶12 (emphasis added). The use of these and similar words convey an intent not to be bound by preliminary agreements. See 20 Atlantic Avenue Corp. v. Allied Waste Industries, Inc., 482 F.Sup.2d 60, 74 (U.S.D.C., D.Mass. 2007) (“consummation of the Transaction is subject to, among other things, execution of the Agreement” indicates no binding agreement until execution); Reprosystem, B.V. v. SCM Corp., 727 F.2d 257, 261-62 (2d Cir. 1984), cert. denied, 469 U.S. 828 (1984) (drafts conditioned the parties’ obligations on receipt of opinion of counsel that agreement has been duly authorized, executed and delivered; thus, no binding agreement until execution) . Moreover, Massachusetts law recognizes that parties may employ an “invalidating clause” or reservation of agreement until execution of later final documents. Targus Group International, Inc. v. Sherman, 76 Mass.App.Ct. 421, 433 (2010) (agreement in principle reached in mediation with independent mediator enforced where parties did not use an invalidating clause). Here, the conditions imposed by Mr. Falby and *556 the reservation in ¶ 12 of the drafts of the Settlement Agreement support Mr. Kennedy’s understanding that the parties would not be bound until execution. Mr. Kennedy’s affidavit and the referenced documents create a genuine dispute regarding the core issue of the parties’ intent.
Finally, “[u]nder Massachusetts law, when parties have agreed to execute a final written agreement, there is a ‘strong inference’ that the transaction is still open and that the parties are not bound until such a written agreement is produced.” Aegis v. Finnegan, 2002 WL 225924 (U.S.D.C., D.Mass. 2002) (quoting Goren v. Royal Invs., Inc., 25 Mass.App.Ct. 137, 140 (1987)).
The Aegis court went on to quote the Restatement (Second) of Contracts §27, comment c (1981) listing the factors bearing on whether a contract has been formed:
the extent to which express agreement has been reached on all the terms to be included, whether the contract is of a type usually put in writing, whether it needs a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether a standard form of contract is widely used in similar transactions, and whether either party takes any action in preparation for performance during the negotiations.
Aegis at *2. Resolution of the fact questions surrounding these factors is generally reserved for the jury.[2] Situation Mgmt. Systems, 430 Mass. at 879, citing Gleason v. Mann, 312 Mass. 420, 423 (1942) (existence of contract turning on oral evidence is for the jury to determine).
Applying the summary judgment standard, the combination of the “strong inference” from the parties’ undisputed agreement to have a formal, written Settlement Agreement, and the existence of disputed facts regarding the factors bearing on whether a contract has been formed, prevents summary judgment for the Chen Family.
CONCLUSION
For the reason stated above, the motion of plaintiffs BRI and the Chen Family for partial summary judgment is DENIED.

 “No particular form of language is necessary to make an event a condition, although such words as ‘on condition that, ’ ‘provided that’ and ‘if are often used for this purpose. Restatement (Second) of Contracts §226 comment a (1981).”

 For example, Mr. Falby’s Supplemental Affidavit acknowledges ¶7 of Mr. Kennedy’s affidavit regarding the Chen Family's mistrust of the Lin Family and the potential disputes among the Lin Family members. Mr. Falby states that the point of requiring notarized signatures of the Lin Family was “to protect BRI and the Chens from claims by one or more of the Lins, including Ko Yen Lin, that they were not bound.” A reasonable inference from this exchange is that the parties understood that no one would be bound until there was notarized execution of the Settlement Agreement.