Richard **KOSTER**, Plaintiff, Appellee,

v.

**TRANS WORLD AIRLINES, INC.,**
Defendant, Appellant.

No. 98–1757.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1998.

Decided June 21, 1999.

Joseph Baumgarten, with whom Pros-kauer, Rose, LLP, James R. DeGiacomo, Judith K. Wyman and Roche, Carens & DeGiacomo, P.C. were on brief, for appellant.

Michael M. McArdle, with whom Earl D. Munroe and Munroe & McArdle were on brief, for appellee.

Before Boudin, Circuit Judge, John R. Gibson,* Senior Circuit Judge, and Lynch, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Trans World Airlines furloughed forty-seven year old Richard Koster as part of a 1994 work force reduction. Koster brought suit, invoking diversity jurisdiction, and a jury determined that TWA had engaged in illegal age discrimination under Massachusetts law, and awarded Koster $1,000,000 in damages. The district court doubled the damages pursuant to a Massachusetts statute and awarded prejudgment interest and attorneys' fees. TWA argues the district court erred in these latter rulings and (1) by denying its motion for a directed verdict and for judgment as a

---

* Of the Eighth Circuit, sitting by designation.

matter of law; (2) in the admission of evidence; and (3) by refusing a requested supplemental jury instruction. We affirm the jury's verdict and award of attorneys' fees, but reverse the award of damages and remand the case for further proceedings on the issue of damages.

TWA hired Koster in 1965, and he initially worked at John F. Kennedy Airport in New York. He was reassigned to Logan Airport in Boston in 1977, and employed in various supervisory positions until his furlough in August 1994. Koster's last position was Supervisor, Ground Operations. He was responsible for Logan's garage, mail, air freight, dining, commissary and store areas. He earned $40,000 per year. TWA consistently promoted Koster and also asked him to take on special assignments when problems arose. Koster's performance evaluations consistently described him as an excellent employee.

In response to TWA's financial difficulties over the last decade, TWA has instituted pay cuts, reductions in force, and restructurings.

In August 1994, TWA's senior management asked Gordon Humpherys, the station manager for Logan Airport, to implement a reduction in force. Humpherys was responsible for TWA's entire station operations at Logan, and Koster reported directly to him. Specifically, TWA management told Humpherys to reduce six supervisor positions to four.

At trial, Humpherys explained that the reduction in force would require the remaining four supervisors to do the work formerly done by six. Thus, his "foremost concern" was to retain those supervisors "who would provide the most productivity" and be best able to run the operation with a minimum of supervision and direction. Humpherys ultimately elected to keep Kathy Hobbs (age 44), Glenn Hutmire (age 56), Henry Sledz (age 49), and Robinanne Stancavage (age 25). He selected Koster (age 49) and Robert Spencer (age 48) for furlough.

Under TWA's Policies and Procedures, a management employee selected for furlough remains eligible for recall for a five-year period. The employee may also elect to take a position equivalent to the last position he or she held before entering management. Koster was entitled to take a position as a transportation agent, which would have paid $26,000 per year. He elected, however, to take the furlough, hoping he would be recalled. Koster unsuccessfully applied for several openings at TWA, but in the spring of 1995, Koster elected early retirement in order to obtain his retirement benefits.

Following his decision to retire, Koster opened up a Minuteman printing franchise. At the time of trial, Koster had yet to take a salary. Koster estimated his back-pay damages at $159,175, and total losses for future pay at $120,819. After the furlough, Koster suffered from anxiety and had trouble sleeping at night. He suffered from heartburn and had to take antacid pills on a regular basis.

Koster filed suit against TWA alleging age discrimination in violation of the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B, and breach of contract. The district court dismissed the contract claim at the close of Koster's evidence, and submitted the age claim to the jury. The jury returned a verdict for Koster, awarding $1,000,000. The court awarded $155,807.50 in attorneys' fees, prejudgment interest on all but the front-pay portion of the damage award, and an additional $1,000,000 pursuant to Mass. Gen. Laws ch. 151B, § 9, finding that TWA acted with knowledge or reason to know that it violated the provisions of Mass. Gen. Laws ch. 151B, § 4. TWA appeals.

## I.

TWA first argues that the district court erred by denying its motion for judgment as a matter of law because Koster failed to: (1) establish a prima facie case of age discrimination; and (2) show that TWA's

articulated non-discriminatory reasons for his furlough were pretextual.

We review de novo the trial court's decision to deny a motion for judgment as a matter of law. We view the evidence in the light most favorable to Koster, drawing all reasonable inferences in his favor. *See Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 716 (1st Cir.1994). We "may reverse the denial of such a motion only if reasonable persons could not have reached the conclusion that the jury embraced." *Id.*

In discrimination cases arising under Chapter 151B of the Massachusetts law, courts have traditionally applied the three-stage order of proof articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] *See Lehman v. Prudential Ins. Co.*, 74 F.3d 323, 327–28 (1st Cir.1996); *Blare v. Husky Injection Molding Sys.*, 419 Mass. 437, 646 N.E.2d 111, 114–15 (1995). Under that standard, a plaintiff who was terminated as part of a reduction in force can generally establish a prima face case of discrimination by showing that (1) he was at least forty years old; (2) he met the employer's legitimate job performance expectations; (3) he experienced adverse employment action; and (4) the employer did not treat age neutrally, or that younger persons were retained in the same position. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 842 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

If the employee establishes a prima facie case, there is a presumption that the employer engaged in impermissible age discrimination. *See Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 348 (1st Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 341, 142 L.Ed.2d 281 (1998). To rebut this presumption, the employer must articulate a legitimate non-discriminatory reason for the employee's termination. *See id.* This entails only a burden of production; the burden of persuasion of discrimination remains with the employee. *See id.* Once the employer has proffered a legitimate, non-discriminatory reason for its adverse employment decision, the presumption generated by the employee's prima facie case disappears, and the employee then has the burden to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination. *See id.* Age discrimination plaintiffs in Massachusetts have a lesser burden than those under federal law. Massachusetts law requires the employee to show only pretext, whereas under First Circuit ADEA law, the mere showing of pretext does not entitle plaintiff to a verdict. *See Mullin v. Raytheon Co.*, 164 F.3d 696, 699 (1st Cir. 1999), *pet. for cert. filed*, May 5, 1999 (No. 98–1779); *Kelley*, 140 F.3d at 348–49; *Blare*, 419 Mass. at 444–45, 646 N.E.2d at 116–17. Therefore, a plaintiff is entitled to judgment on his claim if he establishes a prima facie case and persuades the trier of fact that the employer's articulated justification is pretextual. *See Kelley*, 140 F.3d at 349.

–A–

TWA concedes that Koster was in the protected age group and suffered an adverse employment action. TWA argues, however, that Koster did not establish a prima facie case of age discrimination because he did not prove that he was replaced in his position as Supervisor, Ground Operations, that TWA retained

---

1. The Massachusetts age discrimination statute states in relevant part:

 It shall be an unlawful practice:

 . . . . .

 1B. For an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification. Mass. Gen. Laws ch. 151B, § 4.

younger employees in the same position, or that TWA's selection process was not age neutral.

 TWA failed to preserve its challenge to the sufficiency of Koster's prima facie case. TWA's motions for directed verdict, made at the close of Koster's evidence and at the close of all of the evidence, challenged Koster's failure to prove pretext, not his failure to prove a prima face case. "Appellate review may be obtained only on the specific grounds stated in the motion for directed verdict." *See Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 810 (1st Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988).

 Moreover, we are persuaded that Koster established a prima facie case of age discrimination. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991)(burden is "not onerous."). In an answer to a special interrogatory, the jury found that Koster established a prima facie case of age discrimination. This finding is well supported by the evidence. Although no one took over Koster's exact job, his duties were subsumed by other employees, some of whom were younger, one substantially younger, than him. In a reduction in force, a prima facie case requires only that Koster show that TWA did not treat age neutrally in deciding who to furlough. *See Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 333 (1st Cir.1997). Thus, sufficient evidence existed to allow a reasonable jury to find that Koster met his burden of proving a prima facie case of discrimination.

## –B–.

 TWA next argues that Koster failed to present sufficient evidence from which a jury could reasonably infer that the reasons for TWA's discharge were a pretext for age discrimination. TWA argues that Koster failed to show that TWA did not have a legitimate need to reduce its work force at Logan, and furthermore, did not address the fact that three of the four retained supervisors were also in the protected age class.

Koster does not argue, however, that the reduction in force itself was pretextual. Instead, Koster relies on evidence that TWA's stated reasons for selecting him for furlough were false. In answers to special interrogatories, the jury specifically found that TWA "had not presented credible evidence of a legitimate business purpose for the furloughing of Mr. Koster in August, 1994" and that "Koster has proven that the reason given by [TWA] for his furlough in August 1994 was a pretext for age discrimination." The jury could reasonably make this finding of pretext from the circumstances surrounding Humpherys's selection process. Humpherys testified that he selected Koster for furlough because Humpherys "didn't think he had sufficient people skills, [and] his attitude was not sufficiently good for him to be able to manage the operations on a regular basis." Other witnesses testified, however, that Koster had a very good relationship with employees, and that he was knowledgeable, very professional, and a hard worker. Hutmire, one of the retained supervisors, testified that Koster was a leader and "a workaholic." Koster had perfect attendance record in fourteen out of seventeen years. Koster had been designated acting station manager to fill in for Humpherys on at least two occasions.

In addition, Humpherys testified that in evaluating the supervisors he ranked Koster the "lowest performer." Humpherys admitted, however, that Koster got the job done and that the performance of his crews was satisfactory. He ranked Koster even below Spencer who he testified was "constantly late" and "not a strong supervisor." Humpherys ranked twenty-five year old Stancavage as the second best supervisor of the group, even though she had only three months of supervisory experience. Koster hired Stancavage in 1989 as a customer service agent. She quit on November 15, 1992, and returned to TWA

in June of 1993 as a part-time customer service agent. On January 24, 1994, she was promoted to a full-time employee as a customer service agent in charge. On April 25, 1994, she became a Supervisor, Ground Operations. There was evidence that Stancavage had a full scholarship at M.I.T. and was working for TWA only until she could return to school. Humpherys's primary explanation as to why he decided to retain Stancavage over Koster was that she was "enormously creative" and "very enthusiastic."

After comparing the qualifications of Koster and Stancavage, there is abundant evidence supporting the conclusion that a reasonable employer would have found Koster significantly more qualified than Stancavage, a twenty-five year old employee with three months of supervisory experience. The jury could also reasonably conclude that Koster fit the selection criteria established by Humpherys and that Stancavage did not. Koster obviously made a long-term commitment to working for TWA, while evidence suggested that Stancavage planned to work for TWA until she returned to school. "[A]n employer's asserted strong·reliance on subjective feelings about candidates may mask discrimination." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1297 (D.C.Cir.1998)("enthusiasm"). That three of the four retained supervisors were in the protected age class is of little importance because Koster need only show that TWA furloughed him because of his age. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Moreover, Stancavage is substantially younger than Koster. *See id.* at 313. The jury's disbelief of the reasons set forth by TWA (particularly if the disbelief is accompanied by a suspicion of mendacity)

may, together with the elements of the prima facie case, permit the jury to infer the ultimate fact of intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Aka*, 156 F.3d at 1294 (discrimination can be inferred from evidence that employer selected a significantly less qualified candidate). Koster established pretext by showing that TWA's proffered explanation is unworthy of credence. The court did not err in denying TWA's motion for judgment as a matter of law.

## II.

TWA also argues that the district court's admitting a section of the TWA Management Policy and Procedure Manual and allowing Koster to testify about other employees who had left TWA was reversible error.

## –A.–

Section 10.66.01 of the Manual applied to salaried personnel. The policy section of the provision stated: "[s]alaried seniority will determine the order of force reduction and displacements of Salaried employees," and stated that in a reduction in force, employees should be let go in the following order: contingent employees, probationary employees, regular part-time or full-time employees.[2]

TWA contends that this provision applied only to salaried employees and did not apply to Koster as a management employee, and the district court abused its discretion in allowing the jury to consider this evidence.

We review evidentiary decisions of the trial court for abuse of discretion.

---

2. The section stated:
 When a reduction in force in a job classification is necessary, reductions shall occur in the following order:
 a. Contingent employees—dismissed prior to regular part-time employee furloughs.
 b. Probationary employees—dismissed without prejudice in discretionary order.
 c. Regular part-time or full-time employees—reduced in inverse order of seniority.

*Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 98 (1st Cir.1997).

The district court did not abuse its discretion in admitting section 10.66.01 of the manual, or in refusing to give a curative instruction. Although TWA argues that this provision does not apply to Koster because he was "management" and not "salaried," there was evidence that this provision applied to Koster. First, Koster's furlough letter from TWA referred Koster to section 10.66 for "a statement of his rights with respect to his seniority." Second, Koster testified that he thought that the provision applied to all salaried management employees other than contract (union) labor. He explained that his employee records showed that he was subject to a 14% pay cut in 1986 applicable to "salaried" employees, and he believed the provision applied to him. Thus, a question of fact existed as to whether the provision applied to Koster, and the court did not abuse its discretion in admitting the provision, or refusing to instruct the jury that the section did not apply to Koster. *See* Fed. R. Evid 104(b).

–B–.

TWA further argues that the district court erred in allowing Koster to testify about TWA's treatment of other employees and in denying TWA's request for a supplemental jury instruction advising the jury that it could not consider such anecdotal evidence. TWA contends that the evidence lacked foundation, and that there was no nexus between the other terminations and Koster's termination. TWA further argues that allowing the evidence contradicted the district court's pre-trial

ruling that Koster's "other employee" evidence was not relevant.

In a pre-trial order, the court granted TWA's motion in limine prohibiting Koster from calling six former employees to testify about how TWA furloughed them during other work force reductions. The district court reasoned that such testimony was "collateral," and would require the court to examine "the circumstances of each individual firing."

At trial, Koster testified that during previous reductions in force, he knew other employees over age fifty who TWA had released or furloughed or who had retired. Specifically, Koster testified that he knew over one hundred front-line management employees during his career, and only one retired at age 62 or older. Koster gave examples of TWA employees he had known who were over fifty and who had lost their jobs.

 Koster's testimony did not violate the pre-trial order. The trial court ruling prohibited Koster from calling collateral witnesses to testify about the circumstances surrounding the furloughs of older supervisors. The order did not prohibit Koster from testifying about his own observations of what happened to other employees at TWA. During trial, the court clarified that it would allow Koster to testify about what he perceived regarding the reorganizations.[3]

 TWA argues that the anecdotal testimony is not indicative of age discrimination or of pretext and should not have been admitted. TWA portrays the evidence as irrelevant and highly prejudicial, warranting reversal.

**3.** The parties dispute whether TWA objected to Koster's testimony on this issue. TWA states that it objected "in nearly every instance." We have carefully reviewed the trial transcript and do not characterize TWA's objections as quite so pervasive. We observe, however, that TWA objected to Koster's testimony about a 1974 reorganization and its impact on older workers, particularly Koster's

uncle. The court clarified that Koster could not testify generally about the impact reorganizations had on older workers, but that he could testify about his own observations about the impact on specific workers. TWA's counsel stated: "I will object beyond this point." Thus, TWA adequately preserved its objection to this evidence.

In *Goldman v. First National Bank*, 985 F.2d 1113, 1119–21 (1st Cir.1993), we held that plaintiff's anecdotal evidence was insufficient to form the basis for a finding of age animus. In *Goldman*, the employee had presented the affidavits of eight other employees who stated that they were the oldest employee in their unit and had been performing adequately when their employer dismissed them pursuant to a reduction in force. *Id.* at 1119. We held that "evidence of this sort does little more than corroborate what was undisputed: that members of the protected class were terminated as part of the reduction in force." *Id.* (internal quotations omitted).

Contrary to TWA's argument, *Goldman* did not hold that anecdotal evidence is not admissible and always prejudicial. *Goldman* simply held that the anecdotal evidence presented could not, by itself, establish age animus. *Id.* at 1119. *Accord Shorette v. Rite Aid Inc.*, 155 F.3d 8, 16–17 (1st Cir.1998); *LeBlanc*, 6 F.3d at 847. Indeed, we recently observed that "while proof of a general atmosphere of discrimination is not the equivalent of proof of discrimination … it may add color to an employer's decisionmaking process." *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 28 (1st Cir.1998)(internal quotations omitted). Here, as in *Brennan*, Koster's anecdotal evidence was just a part of his age discrimination picture. The admissibility of Koster's anecdotal evidence was a judgment call, as was the refusal of the requested instruction. Exclusion would not have been an abuse of discretion, but neither was admission.

### III.

■ TWA argues the district court abused its discretion in denying TWA's motion for remittitur or, in the alternative, a new trial on damages. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)

(abuse of discretion standard). TWA, however, bears a heavy burden of showing that an award is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480, 1484 (1st Cir.1994). We will not disturb an award of damages because it is extremely generous or because we think the damages are considerably less. *See id.* We will only reverse an award if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law. *See id.*; *Clausen v. Sea–3, Inc.*, 21 F.3d 1181, 1198 (1st Cir.1994) (remittitur appropriate only when verdict "so exorbitant").

■ TWA does not attack the entire damage award. TWA first takes issue with the damages for emotional distress. Koster's evidence of lost wages (back pay and front pay) amounted to approximately $284,000; thus, TWA argues that the balance of $716,000 represents damages for emotional distress and is excessive. Koster responds that the $716,000 does not necessarily constitute emotional damages, and the jury could have easily decided that Koster's total losses for front pay far exceeded the $120,819 he testified about.

Koster's testimony, however, as to back pay and future pay was quite specific.[4] His attorney in closing argument reiterated that his economic damages totaled $283,995. In the face of such firm evidence of economic damage, we cannot say that the jury could reasonably conclude Koster was damaged above and beyond what he said his damages were. *See Kelley*, 140 F.3d at 355–56.

■ Although determining whether damages for emotional distress are excessive is difficult, such damages are not immune from review. *See Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 678 N.E.2d

---

4. Even if we decided that the $1,000,000 award included economic damages in excess of the $284,000 Koster testified about, those

economic damages do not have "adequate evidentiary support" and may also warrant a remittitur. *See Havinga*, 24 F.3d at 1489.

853, 861–62 (1997). The Massachusetts Supreme Judicial Court held that a $550,-000 award for emotional distress was excessive in *Labonte*. In that case, a law firm fired an employee after the employee developed multiple sclerosis. *Id.* at 855–56. There was evidence that the employee was depressed and that "his confidence was shattered" by the termination. *Id.* at 861. Although the court acknowledged that the employee suffered from depression and sought counseling, it nevertheless concluded that the $550,000 award for emotional distress was excessive. *Id.* at 861–62. The court reasoned that the damage award was grossly disproportionate to the evidence of injury. The plaintiff had not been hospitalized and never took medication to combat his depression, and his depression abated after he found a new job. *Id.* The court concluded that his depression, while real and significant, did not rise to the level awarded by the jury. *Id.* The case was remanded to the trial court to determine the amount of remittitur.

Although testimony from a mental health expert is not required to sustain an award for emotional distress, the absence of such evidence is useful in comparing the injury to the award of damages. For example, in *Sanchez*, a jury awarded $150,-000 in emotional distress damages to a plaintiff in an age discrimination case. 37 F.3d at 723. The district court reduced the award to $37,500, and we affirmed. *Id.* at 723, 726. The plaintiff in *Sanchez* testified about the humiliation he suffered from losing his job and filing for bankruptcy. We indicated that although emotional damages are warranted even without medical or psychiatric evidence, the lack of such evidence is relevant to the amount of award. *Id.* at 724 n. 13.

One of the highest emotional distress judgments in Massachusetts was awarded in *Westinghouse Electric Supply Corp. v. Massachusetts Commission Against Discrimination*, No. CIV. A. 97–4267E, 1999 WL 140492 (Mass.Dist.Ct. Mar. 5, 1999). In that case, Westinghouse fired an experi-

enced salesman after he developed Crohn's disease. *Id.* at *1–2. The claimant suffered from severe depression, insomnia, constant diarrhea, and stomach pain, and the Massachusetts Commission awarded him $250,000 for emotional distress. *Id.* at *3. The Massachusetts court affirmed the award, concluding it was "within the realm of other emotional distress awards," and that "the exacerbation of his illness and consequent termination may support a higher award of damages." *Id.* at *10–11, nn. 16 and 17. Although the evidence of injury was much more severe in *Westinghouse*, the claimant received about a half a million dollars less than Koster. *See id.* at *10 (humiliation, depression, inability to eat, constant diarrhea and pain). In *Westinghouse*, there was no evidence that the claimant found another job as Koster did.

Despite the strict standard of review, courts have ordered remittiturs in a number of cases. *See, e.g., Fontaine v. Ebtec Corp.*, 415 Mass. 309, 613 N.E.2d 881, 883–84 & n. 3 (1993) (emotional distress damages reduced from $80,000 to $25,000); *Powers v. H.B. Smith Co.*, 42 Mass.App. Ct. 657, 679 N.E.2d 252, 254 (1997)(damage award (front-pay and emotional distress) reduced from $750,000 to $350,000); *Kelley*, 140 F.3d at 345 (emotional distress damages reduced from $250,000 to $150,-000); *Sanchez v. Puerto Rico Oil Company*, 37 F.3d at 723 (emotional distress damages awarded under Puerto Rico statute reduced from $150,000 to $37,500). *Accord Hetzel v. County of Prince William*, 89 F.3d 169, 173 (4th Cir. 1996)(award of $500,000 grossly excessive), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996); *see also Brownlie v. Kanzaki Specialty Papers, Inc.*, 44 Mass.App.Ct. 408, 691 N.E.2d 953, 955 (1998) (emotional distress damages of $50,-000).

 There is no doubt that Koster suffered emotionally following his furlough. Koster had worked for TWA for over twenty-five years and was devoted to his job. His seniority status at TWA allowed

him job and vacation flexibility, and he found his work extremely gratifying. After the furlough, Koster had trouble sleeping and was anxious. A vacation to Hawaii "did not go well." He took antacid pills on a regular basis. His new job requires him to work more, and he earns less. His family life has suffered. His wife has had to return to work, and he is not able to participate as fully in the activities of his four children. Following *Labonte*, however, we believe the award is grossly disproportionate to the evidence of emotional distress. There was no evidence that Koster ever sought medical treatment or suffered any long-term depression or incapacitation. Koster was able to open up a business of his own and anticipates taking a salary within two years. Although we acknowledge that the furlough of Koster was particularly painful because of his devotion to TWA, we also recognize that he could have remained with TWA, albeit in a different job with a reduced salary.

▉▉ Accordingly, we conclude that the evidence of injury was grossly disproportionate to the award for emotional distress, and is excessive as a matter of law. We recognize that we have the option of selecting a reduced damages figure ourselves based on the evidence adduced at trial, or remanding the case to the district court for a determination of damages. *See, e.g., Anthony v. GMD Airline Services, Inc.*, 17 F.3d 490, 495 (1st Cir.1994); *Marchant v. Dayton Tire & Rubber Co.*, 836 F.2d 695, 704 (1st Cir.1988).

▉▉ Although we recognize the esoteric nature of damages for emotional distress, in view of the fact that the district court denied TWA's motion for a remittitur, we think the best course is to follow the "maximum recovery rule" authorized by this circuit. *See id.* Under that rule, we condition our ruling that a new trial on damages is appropriate on Koster's declining to remit our determination of Koster's damages. After our careful review of the record and thoughtful consideration of other cases, we believe the evidence of emotional distress would support a maximum recovery of emotional damages of $250,-000.[5] We believe that amount represents the highest amount of damages for emotional distress for which there is adequate evidentiary support. We thus grant a new trial on the issue of emotional damages only, and condition our order on Koster's declining to remit $466,000 of the total amount awarded by the jury.[6]

## IV.

TWA argues the trial court erred in awarding Koster double damages.[7] TWA contends that Chapter 151B requires the court to make a specific finding to warrant the imposition of double damages. TWA speculates that the district court "may have construed" the double damages provision as mandatory, not discretionary.

▉▉ Following the jury's verdict, the district court simply stated: "Okay. The issue now is whether I am going to double the award. And I am. So, I will make ... a finding that I think it is appropriate to double the jury award. And I will do it." The court's May 18, 1998, order tracked the statutory language of Mass. Gen. Laws ch. 151B, § 9. TWA states that *Brownlie*, 691 N.E.2d at 962, requires the district court to make specific findings that the employer knew that the discriminatory act violated the age discrimination

---

5. *Of course, this amount is subject to the discretionary multiplier. See Kelley*, 140 F.3d at 356.

6. Or, $932,000 after application of the discretionary multiplier.

7. If the court finds for the petitioner, "recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the act or practice complained of was committed with knowledge, or reason to know, that such act or practice violated the provisions of said section four...." Mass. Gen. Laws ch. 151B, § 9.

law. Although the court's findings in *Brownlie* were much more specific than the court here, we are convinced that the specificity was gratuitous and not required by the statute.

Neither the statute nor the relevant case law requires that the district court do anything more than enter a finding that the employer acted with knowledge or reason to know that it violated the anti-discrimination statute. *See Brownlie*, 691 N.E.2d at 962. *See also Kelley*, 140 F.3d at 345 (multiplying damages by 2.25). The statute simply requires a finding that the employer satisfied the knowledge element of the statute.

█ Although the district court did not provide a detailed analysis supporting its finding, the judge affirmatively found that it was appropriate to double the damage award. This statement is easily translated into a finding, supported by the record, that TWA acted with knowledge or reason to know. The evidence of Humpherys's explanation for selecting Koster for furlough was not credible. TWA's vice president of employee relations, Thibaudeau, testified about TWA's policy prohibiting age discrimination, and about how the policy was communicated to all managers. This evidence supports the finding that TWA acted with knowledge of its violation of Massachusetts law.

TWA also suggests that the district court "may" have thought double damages were mandatory. TWA refers us to the multiple damage provision of the consumer protection law, which courts have recognized requires more than a "knowing violation," despite the statutory language which suggests a less rigorous standard. *See Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 770 (1st Cir.1996). First, it is obvious from the court's finding that it only considered the doubling mandatory if TWA's conduct met the standard of knowledge required by the statute. *Fontaine* instructs that double damages are mandatory if the knowledge standard of the statute is met, and that triple damages are

discretionary. *See* 415 Mass. at 322, 613 N.E.2d at 889–90 ("a certain recovery of at least double damages"). Although the language of the provision in the consumer protection statute is similar, none of the cases under the age discrimination statute suggest that the knowledge requirement is higher than that suggested by the statute. *See, e.g., Brownlie*, 691 N.E.2d at 962; *cf. Cambridge Plating*, 85 F.3d at 770–771. The court did not err in awarding double damages.

## V.

█ .TWA argues that the attorneys' fee award of $155,807.50 is excessive. Our review of the attorneys' fee award is governed by Massachusetts Law. *Krewson v. City of Quincy*, 74 F.3d 15, 17 (1st Cir. 1996).

█ The amount of a reasonable attorneys' fee, awarded on the basis of statutory authority, is largely discretionary. *See Fontaine*, 613 N.E.2d at 890.

TWA argues that the fee should be vacated because the court abused its discretion in awarding Koster his full attorneys' fees. TWA contends that the case did not warrant the participation of three attorneys, and the court should have reduced the award to take into account that Koster lost on his breach of contract claim.

The district court, however, determined that the fees were reasonable. The judge stated:

> Very frankly, I find the hours reasonable, the amount of time spent. The fact that there were three lawyers on one side and two on the other side, I don't find disproportionate. It is probably fair, especially that you, Mr. DeGiacomo, are one of the most experienced and highly regarded trial lawyers in the city. You could almost argue that it takes three against one, that three against one makes it fair.

TWA does not challenge the billing rate of the attorneys nor does it suggest that

the time was duplicative. It simply argues that "this was not a case warranting the investment of three attorneys."

We find no abuse of discretion in allowing recovery for the time spent by three attorneys. TWA does not suggest the time spent by three attorneys was duplicative, just that it was unnecessary. After consideration, the district court rejected this argument. Counsel's time spent pursuing unsuccessful claims, however, is generally non-compensable "unless it can be shown that the [unsuccessful and successful] claims were interconnected." *Krewson,* 74 F.3d at 19. "Interconnection" can be found when the "claims include[ ] a common core of facts or were based on related legal theories." *Lipsett v. Blanco,* 975 F.2d 934, 940 (1st Cir.1992) (quotations omitted). Although it may be true that Koster's breach of contract and discrimination claims arose out of the same cluster of facts, we need not decide this question because it is the fee target's burden to show a basis for segregability. *See id.* at 941. TWA did not meet this burden either before the district court or this court.

We affirm the judgment of the district court except for the award of damages. We order a new trial on the issue of emotional damages only if Koster decides not to remit $932,000 (plus any interest accrued).