**David C. BISHOP, Plaintiff,**

v.

**BELL ATLANTIC CORPORATION, Defendant.**

No. 99–189–B–S.

United States District Court, D. Maine.

May 22, 2001.

Martha S. Temple, Foote & Temple, Bangor, ME, for David C Bishop, plaintiff.

Frank T. McGuire, John W. McCarthy, Rudman & Winchell, Bangor, ME, Barry A. Guryan, Stephen B. Reed, Epstein, Becker & Green, P.C., Boston, MA, for Bell Atlantic Corporation, defendant.

## ORDER REGARDING DEFENDANT'S POST TRIAL MOTION

SINGAL, District Judge.

Before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law, or, Alternately, Motion for Remittitur (Docket # 69). For the reasons discussed below, the Court DENIES Defendant's Motion in its entirety.

## I. PROCEDURAL BACKGROUND

Plaintiff David Bishop filed suit against Defendant Bell Atlantic Corporation for retaliatory employment discrimination pursuant to the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4552 *et seq.* Defendant filed a motion to dismiss the case, which was partially granted, and a motion for summary judgment, which the Court partially granted as well, narrowing the scope of the case to seven discrete factual disputes appropriate for a jury trial. The Court presided over trial February 12 through February 16, 2001, during which the Court ruled that one of those seven

bases failed as a matter of law. At the end of trial the jury returned a special verdict in favor of Plaintiff based on three of the six possible bases of liability. The jury found that Plaintiff was entitled to $250,000 in compensatory damages and $50,000 in punitive damages.

Subsequently, Defendant moved for judgment as a matter of law, or in the alternative, remittitur. The Court has described the factual background of this case in prior orders, and therefore does not reiterate such information in detail here. It suffices to explain that Plaintiff works in Ellsworth, Maine as a technician for Defendant telephone company, that he filed three complaints with the Maine Human Rights Commission ("MHRC") against his employer, which the jury determined provoked three acts of unlawful retaliation.

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Standard of Review

 To grant a party's motion for judgment as a matter of law pursuant to Rule 50, the Court must find that no reasonable jury could have returned a verdict adverse to the movant. *See, e.g., Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*, 215 F.3d 182, 193 (1st Cir.2000); *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 316 (1st Cir.1999). The Court must review all of the evidence in the record and " 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.' " *White v. N.H. Dep't of Corr.*, 221 F.3d 254, 259 (1st Cir.2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

### B. The Law of Unlawful Employment Retaliation

 Plaintiff brought to trial claims against his employer for violating the MHRA, which prohibits an employer from discriminating against individuals because "they have made a charge, testified or assisted in any investigation, proceeding or hearing under this Act." 5 M.R.S.A. § 4572(1)(E). The language and intent of the MHRA generally follow federal anti-discrimination statutes under Title VII, and Maine's Supreme Judicial Court has ruled that federal precedent guides in interpreting the statute. *See Winston v. Me. Tech. Coll. Sys.*, 631 A.2d 70, 74–75 (Me.1993); *see also Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 436 n. 3 (1st Cir.1997). To establish a prima facie case of unlawful retaliation, a plaintiff must show that "(1) she engaged in protected conduct under Title VII (or here, Maine's Human Rights Act or Whistleblower's Protection Act); (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action." *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir.1996).

An adverse employment action is any type of discrimination "with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment." 5 M.R.S.A. § 4572(1)(A). The First Circuit has noted that adverse employment actions include a variety of types of conduct, such as "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998).

 Several types of circumstantial evidence can demonstrate a causal link between the protected act and the adverse

act, such as evidence of differential treatment in the workplace, temporal proximity between the protected act and the adverse act, statistical evidence showing disparate treatment, and comments by the employer which intimate a retaliatory mindset. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir.1991). Also, if an employer changes how it treats its employee after performing the protected action, that can reveal a causal connection. *See Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 51 (1st Cir.1999).

The jury found that Defendant took three adverse employment actions against Plaintiff because he had filed multiple administrative complaints against his employer. Defendant does not dispute that filing MHRC charges is protected conduct. Rather, Defendant argues that no reasonable jury could have found that the three events were adverse actions or that they were causally related to his MHRC complaints. Thus, the Court must consider the three disputed occurrences: suspending Plaintiff for three days, placing Plaintiff on an action plan, and giving Plaintiff inadequate credit for a job that he had completed.

## C. The Three–Day Suspension

■ Evidence presented at trial showed that on November 16, 1999, Bishop was working at a job site in Sullivan, Maine, where he was trying to install telephone service to a residence. At the Sullivan job site, Bishop found a defect on the "drop wire" between the telephone pole and the home. Deciding to remove the defect, he made a small cut in the wire, but did not slice all the way through the wire, therefore rendering it inoperable. Three months later in February of 2000, Defendant suspended him for three days, purportedly because he had cut the drop wire. Defendant argues that not only is there a

lack of causation between Plaintiff's MHRC claims and the suspension, but also that Plaintiff's conduct amounted to destruction of company property, therefore providing a legitimate, non-retaliatory reason for disciplining him.

Plaintiff maintains that he acted properly in removing the wire's defect and cutting the wire. Maintaining that Defendant's rationale is merely a pretext, Plaintiff testified that he had trimmed defects out of wires prior to filing MHRC charges without facing any sort of discipline. Some of Plaintiff's fellow technicians testified that they had cut out defects in drop wires without being disciplined, and that in fact, it was a fairly regular occurrence. In addition, testimony revealed that Plaintiff's supervisors did not inform him that he had committed an infraction by severing the drop wire when they suspended him on February 28, 2000. In fact, witnesses testified that the supervisors gave Plaintiff no explanation as to why he was being suspended.

Quite simply, the jury believed the course of events as outlined by Plaintiff's witnesses rather than the explanations offered by Defendant's witnesses. A reasonable jury could find that there was a causal nexus because the three-day suspension represented a marked change in how the employer treated Plaintiff subsequent to his administrative claims and that the company treated Plaintiff quite differently from how it treated similarly situated employees.

To this, Defendant argues that although Bishop and his co-workers occasionally would sever all the way through a drop wire, neither Bishop nor his co-workers ever had cut only half-way through a wire. Therefore, Defendant argues that Bishop's half cut was distinct behavior that is not comparable as a matter of law. Defendant, however, did not offer evidence con-

clusively proving that cutting half-way through a wire is worse than cutting completely through it, thereby necessitating discipline. Indeed, a reasonable jury could compare the company's treatment of technicians who cut half-way through wires and those who cut entirely through wires.

Moreover, a reasonable jury could find that Defendant's proffered non-retaliatory reasons for suspending Plaintiff were merely pretextual. Because his supervisors did not explain to him why they were suspending him, Plaintiff presented strong circumstantial evidence that his employer later contrived the cut drop wire as a justification.

## D. The Action Plan

On November 16, 1999, Defendant placed Plaintiff on an "action plan". The action plan required Plaintiff to contact by telephone one of four supervisors and obtain permission to stop working on any job that he could not complete before proceeding to the next job. If Plaintiff was unable to reach the first supervisor who he tried to contact, he had to keep making telephone calls until he contacted one. Bishop argued that being required to make such calls unfairly interfered with his work day and reduced his productivity.

Defendant argues that being placed on an action plan cannot amount to an adverse employment action because he had asked for the supervisors' phone numbers and because the action plan actually helped Plaintiff to improve his productivity. Defendant's first argument is spurious because Plaintiff did not ask to be put on the action plan. His testimony indicates that he asked for some of his supervisors' telephone numbers because he had not been given them initially and he did not wish to violate the action plan by failing to make the appropriate telephone calls.

Regarding Defendant's second argument, company documents show that Plaintiff's productivity ratings for the first half of 2000 were greater than his productivity during all of 1999. A reasonable jury, however, could construe that Plaintiff's productivity rose for reasons unrelated to the action plan. Indeed, Defendant can point to no evidence directly demonstrating that the action plan helped Plaintiff. Rather, a reasonable jury could infer that by having to make hundreds of telephone calls, Plaintiff was hindered in his work. Moreover, a reasonable jury could find that the action plan was a company program implemented to harass Plaintiff, and thus constituted an adverse employment action.

Also, a reasonable jury could find that the institution of the action plan was causally connected to the MHRC filings. Evidence adduced at trial demonstrated that Bishop had never been placed on an action plan before filing the administrative complaints, even though his productivity ratings had not changed dramatically since that time. Similarly situated technicians who had been placed on action plans were not required to make as many telephone calls as he was. Thus, the Court finds that a reasonable jury could find that the action plan was an adverse action taken because Plaintiff filed an MHRC charge.

## E. Not Giving Proper Credit for Jobs Completed

Evidence presented at trial showed that on October 18, 1998, Plaintiff received credit for completing two jobs that day, when in reality he had completed three jobs. Testimony demonstrated that credit for completed jobs impacts an employee's evaluations. Also, evidence presented at trial demonstrated that similarly situated employees had never received inadequate credit for a completed job, and that this

had never happened to Plaintiff prior to filing his three charges with the MHRC.

Without citing any case law, Defendant argues that not receiving proper credit for one job on one day is such a minor affront that it is not sufficient to constitute an adverse employment action.[1] During trial, Defendant's witnesses explained that not receiving credit for one job on one day would have only a miniscule impact on an employee's evaluations, and during cross examination Plaintiff admitted that inadequate credit for a single job would not have very much effect on his ratings.

■■■ To demonstrate retaliatory discrimination, Plaintiff must show "a materially adverse employment action." *E.g.*, *Simas*, 170 F.3d at 49. "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir.1996) (internal citations omitted). Allegedly adverse actions should be "viewed in aggregate" and "otherwise minor slights, relentlessly compounded, may become sufficiently 'adverse' to warrant relief." *Simas*, 170 F.3d at 48, 50.

The Court stated in a previous order that not receiving credit for a single job may be a de minimus action that, standing alone, would not entitle a plaintiff to relief. Taken together with the three-day suspension and the action plan, however, the inadequate job credit could constitute a materially adverse action. Based on the aggregate of the circumstances, a reasonable jury could find that giving Plaintiff credit for only two jobs when he actually performed three was an adverse employment action.

Moreover, Plaintiff presented evidence demonstrating a causal link between the inadequate job credit and his filing of the MHRC claims. Similarly situated co-workers testified that they never had received inaccurate credit for completed jobs and Plaintiff testified that he never had received inaccurate credit for completed jobs prior to filing his MHRC claims. Defendant tried to show that it had a legitimate, non-retaliatory reason by arguing that on October 18, 1998, Plaintiff clocked out of work after 7 p.m. and that the computerized time clock system failed to register the job. Another technician, however, testified that he often clocked out of work after 7 p.m. yet still received proper job credit. Therefore, a reasonable jury could find that Defendant failed to give Plaintiff proper job credit because he filed MHRC claims, and that Defendant's justification was merely pretextual.

F. Temporal Proximity

■■■ Defendant argues that the three bases that the jury found supported Plaintiff's cause of action are too divorced in time from the date that he filed his MHRC complaints. Plaintiff filed three complaints with the MHRC on August 26, 1997, February 11, 1998, and February 3, 1999. The job credit problem occurred on October 18, 1998, Defendant placed him on the action plan on November 16, 1999, and Defendant suspended him on February 28, 2000. Thus, Defendant gave Plaintiff inadequate job credit about eight months after Plaintiff filed the second MHRC charge,

---

**1.** The Court notes that Defendant did not make this de minimus argument at the summary judgment stage.

Defendant implemented the action plan about eight months after Plaintiff filed the third charge, and Defendant suspended him approximately one year subsequent to the third charge. The Court notes that it is not clear from the record when Defendant became aware of these administrative complaints.

Defendant argues that because of these time periods, a reasonable jury could not find that the three acts were committed because Plaintiff had filed MHRC complaints. Temporal proximity, however, is not the only manner of circumstantial evidence that a jury may consider in determining whether or not a causal connection exists. *See, e.g., Simas,* 170 F.3d at 51; *Mesnick,* 950 F.2d at 828. For example, a comment evincing retaliatory animus can serve as direct evidence of retaliatory motive, thereby reducing the need for the jury to rely on circumstantial evidence—such as timing—to find a causal connection. *See, e.g., Clockedile v. N.H. Dep't of Corr.,* 245 F.3d 1, 7 (1st Cir.2001). In the instant case, evidence was presented that one of Plaintiff's supervisors called him a "festering pus sore on [my] ankle" during an MHRC hearing. A reasonable jury could conclude that such a comment evinces a retaliatory mindset. Moreover, even though several months may have passed between the protected acts and the adverse actions, other forms of circumstantial evidence compounded with the supervisor's statement created enough evidence for a reasonable jury to find a causal connection.

Based on the foregoing, the Court finds that Defendant has failed to establish that no reasonable jury could have found that Defendant was liable on the three disputed bases.

## III. MOTION FOR REMITTITUR

In the alternative, Defendant argues that it is entitled to a remittitur because the jury's award was unwarranted by the evidence presented at trial. The jury found that Plaintiff was entitled to $250,000 in compensatory damages and $50,000 in punitive damages, for a total of $300,000, which coincidentally is the maximum possible total recovery under the MHRA. *See* 5 M.R.S.A. § 4613(2)(B)(8)(e)(iv).

### A. Compensatory Damages

A court should grant a motion for remittitur when an award of damages is grossly excessive, inordinate, shocking to the conscience, or so high that it would be a denial of justice to permit it to stand. *See, e.g., Koster v. Trans World Airlines, Inc.,* 181 F.3d 24, 35–36 (1st Cir.1999). In *Koster,* an employment discrimination case not terribly distinct from the instant case, the First Circuit reduced a jury's award of compensatory damages for emotional harm from $716,000 to $250,000.

Defendant argues that based on the factual circumstances of *Koster,* the instant Plaintiff's award is excessive. Comparing the evidence presented by Plaintiff and the facts of *Koster,* however, the Court is not convinced that Plaintiff suffered less emotional harm than the plaintiff in *Koster. See id.* (plaintiff felt anxious, he had trouble sleeping, his family life suffered, and he had to find less satisfying employment). In light of the facts in the present case, the Court finds that an award of $250,000 for emotional damages is not grossly excessive, and that remittitur is inappropriate.

### B. Punitive Damages

Plaintiff may recover punitive damages against his employer if he demonstrates that Defendant engaged in a discriminatory practice with malice or reckless indifference to his rights as protected

by the MHRA. *See, e.g.,* 5 M.R.S.A. § 4613(2)(B)(8)(c); *Kopenga v. Davric Me. Corp.,* 727 A.2d 906, 910 (Me.1999). When a plaintiff seeks punitive damages from a corporation, such as the within Defendant, the claimant must also show that at least one of the following four possible criteria apply: (1) that a manager retaliated against him while acting within the scope of employment, (2) that the corporation authorized the retaliation, (3) that the corporation recklessly employed those who retaliated against Plaintiff, or (4) that the corporation ratified or approved any retaliation. *See, e.g., Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 542–43, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

Evidence presented at trial indicated that several supervisors and managers had become aware of Plaintiff's MHRC charges. During cross-examination, the supervisor allegedly responsible for much of the retaliation against Plaintiff, James Jordan, testified that representing the company's "management" at Plaintiff's MHRC hearings were himself and others, including another "first-line" supervisor, a "second-line" supervisor, and another member of management who had come to Maine from the company's Boston office. Testimony demonstrated that at one of these hearings Jordan made the comment that Plaintiff was "a festering pus sore." Jordan's own testimony established that he was a manager, and that other managers knew that Plaintiff had filed administrative complaints and that something was amiss in the Ellsworth garage. Jordan and other managerial employees of Defendant corporation testified that they knew retaliatory discrimination was illegal.

The evidence adduced at trial showed that a manager retaliated against Plaintiff, thereby satisfying the first of the four possible criteria for punitive damages. *See, e.g., Kolstad,* 527 U.S. at 542, 119

S.Ct. 2118. Therefore, a reasonable jury could find that a manager retaliated against Plaintiff with reckless indifference to Plaintiff's rights. Not only does the Court find that punitive damages were justified, but also the Court finds that the jury awarded a relatively modest amount of punitive damages. Therefore, the Court concludes that remitting the punitive damages is unwarranted.

## IV. CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's Renewed Motion for Judgment as a Matter of Law, or, Alternately, Motion for Remittitur.

SO ORDERED.