Troy, J.
The plaintiffs, David E. Oueliet (“Oueliet”) and Silverleaf Development Corporation (“SDC”) (collectively “the plaintiffs”), bring this action against the defendants, Leslie T. Armstrong (“L. Armstrong”) and Arthur A. Armstrong (“A. Armstrong”), as Trustees of Cappy’s Way Realty Trust (“CWRT”) (collectively “the defendants”), to prosecute a mechanic’s lien recorded by Ouellet’s assignor, G. Lopes Construction Company, Inc. (“Lopes”) pursuant to G.L.c. 254, §4. Specifically, in Count I of the Amended Complaint, the plaintiffs seek to enforce the mechanic’s lien against the proceeds of a foreclosure of property formerly owned by the defendants as Trustees of CWRT. Pursuant to Mass.R.Civ.P. 56, both parties now move for summary judgment.[4] For the reasons stated below, the plaintiffs’ motion is DENIED, and the defendants’ motion is ALLOWED.
Background
The undisputed and disputed facts are set out below. Lopes, a Massachusetts corporation with a place of business in Taunton, Massachusetts is a subsidiary of New England Recycling, Inc. (“NER”). L. Armstrong and A. Armstrong are the current Trustees of CWRT, which, from October 18, 2001 through November 20, 2002, was the record owner of property-known as Tri-Town Estates, sometimes known as Cappy’s Way, Plain Street, Brockton, Massachusetts (“the Property”). On October 18, 2001, a Declaration of Trust establishing CWRT was duly recorded. That same day, CWRT purchased the Property from Michael Kaitz (“Kaitz”) and Audrey Cappiello, Trustees of Mimi Realty Trust, established on February 25, 2000. The deed from Mimi Realty Trust to CWRT was duly recorded. At the time that CWRT purchased the Property, Arthur Amaral (“A. Amaral”) and Laura-Jo Amaral (“L. Amaral”) were the Trustees of CWRT. A. Amaral resigned as Trustee of CWRT on the date of purchase, October 18, 2001.[5]
The Property was foreclosed by Joseph Correia (“Correia”), the fourth mortgage holder, on or about November 20, 2002.[6] Subsequently, on or about November 29, 2002, the Property was foreclosed on by Mark Shaevel (“Shaevel”), the Trustee of Investors Fund Trust and the first mortgage holder. The foreclosure of the first mortgage closed on or about January 7, 2003, at which time the foreclosure on the fourth mortgage became moot.
The plaintiffs maintain that A. Amaral was a road builder and general contractor who operated in his name, in joint ventures with his wife, L. Amaral, and as a sole proprietorship called Silverleaf Construction Company (“SLC”). According to the plaintiffs, A. Amaral performed construction work for and on the Property from July 19, 2001 until sometime after May 3, 2002.[7] In a hand written note, dated July 19, 2001, and signed by Kaitz as Trustee, Correia as witness, and apparently A. Amaral, Kaitz wrote the following:
RE: Work Being Performed on Tri Town Estates, Brockton, MA.
I, Michael Kaitz, Trustee will not be responsible for any costs incurred regarding the work being performed by Cappys Way LLC, Arthur Amaral or any other entity to that effect. Any engineering, laying of hay bales etc. will be the responsibility solely of the buyers.
*101 Subsequently, on October 16, 2001, A. Amaral, L. Amaral and L. Armstrong signed an agreement, which stated:
We, ARTHURAMARAL and LAURA-JO M. AMARAL, Individually and as beneficiary of Cappy’s Way Realty Trust, under a Declaration of Trust dated October 18, 2001 and recorded with the Plymouth County Registry of Deeds in Book 20726 at Page 232, agree with LESLIE T. ARMSTRONG that should the cost of the construction of the roadways as approved on subdivision plan #55 of2001 in Plan Book 44 at Pages 195-198 exceed Two Hundred Seventy Thousand Dollars ($270,000.00), that extra cost will be borne by the beneficial interest of LAURA-JO M. AMARAL.
On or about September 11, 2001, SDC, of which Ouellet was president, and NER entered into a written Credit Information and Agreement (“Credit Agreement”). Pursuant to the Credit Agreement, signed by Ouellet, SDC agreed to pay for “land development and housing construction” in the amount of $500,000.00. SDC further agreed that it would “pay the account debt plus all costs of collection, including reasonable attorneys fees and interest on any delinquent balance . . .” Apparently, NER was to provide construction materials and services.
Lopes never entered into a written contract with CWRT or any trustee or person authorized to act on behalf of CWRT.[8] As evidenced by signed delivery tickets, from on or about October 23, 2001 until on or about October 27, 2001, Lopes provided construction materials and services to the Property.[9] A. Amaral obtained limited authority from Ouellet to charge construction materials and services to the Credit Agreement. The retail cost of construction materials and services delivered by Lopes to the Property was $131,574.25. Neither A. Amaral, L. Amaral nor SLC has repaid Ouellet or paid Lopes for the construction materials provided to the Property.
On November 28, 2001, Lopes recorded a Notice of Contract with the Plymouth County Registry of Deeds in Book 20998, Page 347, and on March 13, 2002, Lopes recorded a Statement of Account with the Plymouth County Registry of Deeds in Book 21079, Page 18. There is no evidence that Lopes served a copy of the Notice of Contract upon the owner, CWRT. In both the Notice of Contract and Statement of Account, Lopes listed Michael Kaitz, Trustee of Mimi Realty Trust as the owner of the Property. As of November 28, 2001, CWRT, Trustees L. Armstrong and L. Amaral, was the owner of the Property.[10]
On May 17, 2002, Lopes filed its Complaint to Enforce Mechanic’s Lien, and on June 4, 2002, Lopes recorded an attested copy with the Plymouth County Registry of Deeds at Book 22198, Pages 313-318. On June 14, 2002, Lopes filed its Amended Complaint to Enforce Mechanic’s Lien, and on June 17, 2002, it recorded an attested copy with the Plymouth County Registry of Deeds at Book 22334, Pages 30-35. On July 25, 2002, Lopes filed its Second Amended Complaint to Enforce Mechanic’s Lien, adding L. Armstrong as a defendant.
Ouellet is prosecuting this lawsuit on behalf of Lopes as the result of an assignment on September 8, 2003. Ouellet now seeks to enforce his assignor’s rights pursuant to the Mechanics’ Lien Statute, G.L.c. 254.
Discussion
Summary judgment shall be granted only where there are no genuine issues of material fact in dispute and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Com, 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court views the facts “in the light most favorable to . . . [the non-moving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). The moving party bears the burden of affirmatively demonstrating the absence of a genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party demonstrates the absence of a triable issue, “the non-moving party may not simply rest on pleadings, ‘but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.’ ” Correllas v. Vivetros, 410 Mass. 314, 317 (1991), quoting Mass.R.Civ.P. 56(e). “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
Even if the facts of the case are disputed, “summary judgment is still available if the party with the burden of proof at trial (here the plaintiffis]) fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor.” NG Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002). In such an instance, “a trial would be useless and the moving party is entitled to summary judgment as a matter of law.” Kourouvacilis, 410 Mass, at 715, quoting Celotex Corp., 477 U.S. at 328.
The sole issue in this case is whether the plaintiffs’ assignor, Lopes, has met all the requirements set forth in G.L.c. 254, §§4 and 8, such that the plaintiffs, by assignment, have a valid mechanic’s lien against the defendants. The principal purpose of G.L.c. 254 is “to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner’s real estate.” E. Coast Steel Erectors, Inc. v. Ciolfi, 417 Mass. 602, *102 605 (1994), quoting Hammill-McCormick Assocs. v. New Eng. Tel. & Tel Co., 399 Mass. 541, 542-43 (1987). A mechanic’s lien is derived from statute, and therefore, “must be perfected and can be enforced only as provided by statute.” Nat’l Lumber Co. v. LeFrancois Constr. Corp., 430 Mass. 663, 666 (2000); E. Coast Steel Erectors, Inc., 417 Mass, at 605 (stating that G.L.c. 254 must be strictly complied with to render a mechanic’s lien enforceable). Furthermore, G.L.c. 254 must be “strictly construed against the party claiming the lien." NG Bros. Constr., Inc., 436 Mass, at 644.
General Laws c. 254, §4 outlines the requirements to establish a subcontractor’s lien. E. Coast Steel Erectors, Inc., 417 Mass, at 605. In relevant part this section provides that a subcontractor who furnishes labor, material, rental equipment, appliances, or tools “under a written contract with a contractor, or with a subcontractor of such contractor, may file or record in the registry of deeds ... a notice of his contract...” G.L.c. 254, §4. Moreover, pursuant to G.L.c. 254, §8, a subcontractor is required to record a “statement, giving a just and true account of the amount due .. .” The defendants claim that Lopes was deficient in satisfying the requirements of G.L.c. 254, §§4 and 8 for the following reasons: (1) there was no “written contract” between SDC and Lopes, A. Amaral was never a general contractor, and SDC was never a contractor or subcontractor on the Property; (2) the Notice of Contract filed by Lopes was defective; and (3) the Statement of Account was not timely recorded.
For this court to find a valid mechanic’s lien pursuant to G.L.c. 254, §4, there must first be an “original contract” between the owner of the property and the general contractor. See Nat’l Lumber Co. v. Epstein, 2000 Mass.App.Div. 317, 319 (2000). In addition, the subcontractor, Lopes, must have had a “written contract” with a contractor or subcontractor of such contractor. General Laws c. 254, §2A defines a “written contract” as “any written contract enforceable under the laws of the commonwealth.”
The plaintiffs offer two documents as evidence of an “original contract” between the owner of the Property, CWRT, and A. Amaral. The plaintiffs suggest that these documents show that A. Amaral was the general contractor hired to do work on the Property. The first document is awritten note dated July 19,2001, signed by Kaitz, Correia, and someone else who the plaintiffs argue is A. Amaral.[11] The document stated that Kaitz would not be responsible for the costs of work being performed on the Property by Cappy’s Way, LLC, A. Amaral, or any other entity. The second document that the plaintiffs refer this court to is an agreement signed by A. Amaral, L. Amaral, and L. Armstrong. The agreement stated that L. Armstrong would not be responsible for the cost of construction of the roadways on the Property if it exceeded $270,000.00, and any extra cost would be “borne by the beneficial interest” of L. Amaral.
It is unclear from the face of these documents and the conflicting evidence in the summaiy judgment record what the extent of A. Amaral’s obligation was in relation to the Property. When the terms of a contract are uncertain and ambiguous, any determination of the parties’ intent is best left for a jury, and is not an appropriate issue for summaiy judgment. See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002) (internal citations omitted) (stating, “(i]f a contract... is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summaiy judgment . . . Where, however, the contract . . . has terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the parties is a question of fact to be determined at trial”); see also Madden v. Estin, 28 Mass.App.Ct. 392, 395 (1990) (stating that summary judgment is inappropriate when a “demanding exploration of all the circumstances” is needed to determine contracting parties’ intent). Hence, the genuine disputes as to whether A. Amaral was the general contractor on the Property and whether these documents satisfy the “original contract” requirement of the statute are not for this court to decide on a motion for summaiy judgment.
As to the required “written contract” between the subcontractor, SDC, and the subcontractor, Lopes, the defendants claim that no contract exists. The defendants set forth several arguments against the plaintiffs’ claim that SDC and Lopes had a “written contract” with respect to the Property. Generally, the defendants contend (1) the Credit Agreement is between SDC and NER, the parent company of Lopes, and Lopes is not bound to the contracts of its parent company, (2) the Credit Agreement is nothing more than a promise to possibly provide credit in the future, and not a promise to provide labor and/or materials as required by statute, and (3) the signed deliveiy tickets for materials provided by Lopes to the Property contain no information about the price and nature of the materials, and therefore, cannot be used to make a valid “written contract.” While this court tends not to be persuaded by the defendants’ arguments and is inclined to agree with the plaintiffs’ assertion that the Credit Agreement was a sufficient “written contract” pursuant to G.L.c. 254, §4, it need not decide this issue because the defendants are entitled to summaiy judgment regardless of whether the contract was in compliance with the statutory requirements.
Indeed, even if this court were to find that the contracts in this case were valid as a matter of law, that A. Amaral was the general contractor for work on the Property, and that SDC was a subcontractor, the defendants argue that Lopes still did not adequately comply with the provisions of G.L.c. 254, §4 dealing with the recording of a Notice of Contract. General Laws c. 254, §4 requires that to claim a mechanic’s lien, a subcontractor must file:
*103 a notice of his contract substantially in the following form:
Notice is hereby given that by virtue of a written contract dated_______, between_______ _________contractor (or subcontractor) and _said_is to furnish or has furnished labor or material, or both labor and material, or is to furnish or has furnished rental equipment, appliances or tools, in the erection, alteration, repair or removal of a building, structure or other improvement of real property by - contractor, for_, owner, on a lot of land or other interest in real property described as follows . . .
(Emphasis added.) The Notice of Contract, therefore, must include the owner of the property. Cf. Nat’l Lumber Co., 430 Mass, at 666, 670. While the parties do not dispute that Lopes indeed filed a Notice of Contract with the Plymouth County Registry of Deeds, they do dispute whether Lopes made a fatal error in its filing when it listed Michael Kaitz, Trustee of Mimi Really Trust, as the owner of the Property instead CWRT. This court believes Lopes not only made this fatal error, but made another one as well.
The Notice of Contract filed by Lopes references the subject of the claimed mechanic’s lien in this case, namely the materials provided after ownership of the Property was transferred from Mimi Realty Trust to CWRT. CWRT was the owner of record on November 28,2001, the day the Notice of Contract was recorded. Moreover, CWRT was the owner of record at the time that Lopes delivered materials to the Property.[12] Despite these facts, however, on the Notice of Contract Lopes listed the owner as Michael Kaitz, Trustee of Mimi Realty Trust. This was the first fatal error.
The plaintiffs urge that this court interpret Nat’l Lumber Co., 430 Mass, at 671-72, in a manner which would make it irrelevant that Michael Kaitz, Trustee of Mimi Realty Trust, was listed as the owner of record rather than CWRT. Although plaintiffs’ argument is compelling, this court is not convinced. In Nat’ Lumber Co., the Supreme Judicial Court concluded that an owner who acquires title to property after the Notice of Contract has been recorded may be named as a defendant in an action to enforce a mechanic’s lien. 430 Mass, at 666. In this case however, we have a situation in which the new owner, CWRT, acquired title to the Property before the Notice of Contract was recorded. General Laws c. 254, §4 requires that the owner of the property be listed in the Notice of Contract, and here, Lopes failed to accurately list the owner. Therefore, the lien was not perfected.
This conclusion is supported by the SJC’s description of G.L.c. 254 as a mechanism “to ensure that a person searching the land records in a registry of deeds can determine with certainty whether or not title to a particular parcel of land is encumbered by a mechanic’s lien.” Id. at 668. To emphasize this purpose, the SJC quoted from William S. Howe Co. v. Theyson, 263 Mass. 27, 29 (1928), stating: “The statute . . . regard[s] it as important that the name of the [original] owner should be given in the [statement of account] . . . because, otherwise, subsequent purchasers who buy upon the faith of the registry title are liable to be misled.” Nat’l Lumber Co., 430 Mass, at 670. Lopes failed to list the proper owner in the Notice of Contract and the Statement of Account, thus neglecting a vital requirement of the Mechanics’ Lien Statute.
Lopes’ second fatal error was its failure to provide actual notice to CWRT of his recording of the Notice of Contract. A subcontractor who records a Notice of Contract is statutorily required to provide the owner of the property “actual notice” of that filing in order to perfect a mechanic’s lien. See G.L.c. 254, §4 (stating, “[u]pon filing or recording a notice, as hereinbefore provided, and giving actual notice to the owner of such filing, the subcontractor shall have a lien upon such real properly... ”) (emphasis added); see also Scituate Ray Precast Concrete Corp. v. Intoccia Constr. Co., 15 Mass. L. Rptr. 640, 641 (Mass. Super. Ct. Oct. 29, 2002) (Mulligan, J.) (providing that in order to succeed on their motion for summary judgment, a plaintiff seeking enforcement of a mechanic’s lien must show that he “serve[d] a copy of the Notice of Contract upon the Owner”). The plaintiffs attempt to remedy Lopes’ failure to provide “actual notice” to CWRT by merely relying on the disputed contention that A. Amaral was the owner and general contractor of CWRT, and therefore CWRT must have known that it had an obligation to Lopes. Regardless of whether A. Amaral was the general contractor, or for that matter the owner of record of CWRT, the statute requires that in order to perfect a mechanic’s lien, actual notice of the filing must be given to the owner. G.L.c. 254, §4. There is no evidence within the summary judgment record that such notice was provided to anyone involved with CWRT.
Where the SJC has mandated that G.L.c. 254 be “strictly construed against the party claiming the lien,” NG Bros. Constr., Inc., 436 Mass, at 644, this court is not prepared to sidestep the language of the statute and overlook technical deficiencies in Lopes’ handling of the Notice of Contract. For this reason, Lopes’ mechanic’s lien is not valid, and the defendants are entitled to summary judgment.[13]
ORDER
For the reasons stated above, it is ORDERED that the plaintiffs’ motion for summary judgment is DENIED and the defendants’ motion for summary judgment is ALLOWED.

The defendants suggest that only summary judgment as to Count I of the Amended Complaint is before the court, and therefore the parties’ motions should be treated as partial *104 motions for summary judgment. An award of summary judgment in favor of either party as to Count I, however, will be determinative of all counts.

The evidence in the record indicates that it was not until November 29, 2001, that this resignation was recorded with the Plymouth County Registry of Deeds.

L. Armstrong is the second and third mortgage holder on the Property for loans to A. Amaral and L. Amaral in the amount of $120,000.00 and $25,000.00.

The defendants dispute this contention.

According to the affidavit of Debbie Dutra, Treasurer and Keeper of Records at Lopes and NER, NER assigned the Credit Agreement to Lopes in the ordinary course of business in September 2001.

There is no evidence in the record disclosing the name or position of the person who signed the delivery tickets.

According to the documents in the record, L. Armstrong was appointed Trustee of CWRT on October 18, 2001, however this was not recorded with the Plymouth Registry of Deeds until November 29, 2001.

This court is unable to discern if the third signature on this document is that of A. Amaral.

Although A. Amaral had resigned as Trustee as of October 18, 2001, it appears from the summary judgment record that he was still the owner of record of CWRT as of November 28, 2001, along with L. Amaral.

This court need not address the defendants’ argument that Lopes did not timely file a Statement of Account pursuant to G.L.c. 254, §8, because it has already decided in the defendants’ favor. Even if this court were to address the matter, the record contains disputed issues of fact as to when work was performed on the Property and by whom the work was performed. Therefore, summaryjudgment as to this issue would not be appropriate.